## DAVIS *v.* MARTIN STAVE COMPANY.

### Opinion delivered June 8, 1914.

1. CONTRACTS—WORDS AND PHRASES—ORAL TESTIMONY TO EXPLAIN.—Where a contract contains words of latent ambiguity or where technical terms are used or terms which by custom and usage are used in a sense other than the ordinary meaning of the words, oral testimony is admissible to explain the meaning of the term or word used. (Page 330.)

2. CONTRACTS—INTENTION OF PARTIES—USAGES.—Usage, when it is uniform and well settled, and is not in contradiction of the expressed terms of the contract, is deemed to form a part of the contract and to enter into the intention of the parties. (Page 330.)

3. CONTRACTS — CONSTRUCTION — EVIDENCE — CUSTOM AND USAGE — DAMAGES.—Plaintiff sold to defendant "all the oak timber on certain land, suitable to make staves or stave bolts." Under the evidence it was customary to use only white oak timber for such purposes. *Held*, under the contract defendant was entitled to cut only white oak timber, and that he would be liable in damages for other timber cut from the land. (Page 331.)

Appeal from Columbia Chancery Court; *James M. Barker*, Chancellor; reversed.

#### STATEMENT. BY THE COURT.

J. L. Davis brought this suit against the Martin Stave Company to recover the sum of three hundred dollars, the value of a quantity of red oak timber which he alleges was wrongfully cut from his lands by the Martin Stave Company. In its answer the Martin Stave Company admitted that the plaintiff was the owner of the lands from which the timber was cut, but denied that it wrongfully cut the timber therefrom. The defendant

also alleged that it was the owner of all the red oak timber cut by it under a timber deed from the plaintiff, J. L. Davis. The plaintiff filed a reply in which he admitted that he had sold and conveyed to the defendant all the oak timber on the lands described in his complaint suitable to make staves and stave bolts, but he alleged that at the time he executed the timber deed to the defendant it was understood between them that he was only conveying to them the white oak timber, and its species, and that red oak timber was not at that time used for making bolts. He further alleged that J. L. Jean, by verbal contract, purchased the timber from the defendant, entered into possession of it and paid the defendant the purchase price for the same. The plaintiff thereupon moved to transfer the case to equity, which was done without objection on the part of the defendant.

The facts are as follows:

J. L. Jean testified: I live in Columbia County, and purchased the timber in controversy from J. L. Davis for the Martin Stave Company. Joe Rowe was the agent for the Martin Stave Company, and had been trying to purchase the timber but was unable to do so. I told him that I could purchase the timber for the company if he would allow me to haul the timber, which he agreed to do. After the timber was purchased, Mr. Rowe could not get any hands to help cut the timber, and I told him I would take the timber off of the company's hands for the price it had paid for it if he would give me $6.50 to put it on the yard. He told me he would take it up with the Martin Stave Company and let me know. Later he told me that I could have the timber at the price agreed upon, and I told him I would pay for it out of the first lot of bolts that were turned in. The first check for my bolts came to $250.70, and I paid the company out of this sum. I did not require any deed from the company because I was already in there cutting the timber and expected to get through with it within a month. At the time I bought the timber I understood that white oak was all the timber embraced in the deed. At the time

.the timber was bought by the Martin Stave Company from Mr. Davis it was not the intention to purchase anything except the white oak timber and its species. At the time the deed was executed, red oak timber was not used in that community for the purpose of making staves and bolts, and had never been so used, and was not considered suitable for that purpose.

J. L. Davis testified: I have been selling oak timber for fifteen years, and during this time I have never known of any red oak timber to be used for staves or stave bolts. At the time I executed the timber deed to the Martin Stave Company, I intended only to convey the white oak timber and its species, and this was understood by Mr. Rowe and Mr. Jean, who purchased the timber for the Martin Stave Company. The timber deed from J. L. Davis to the Martin Stave Company was dated September 8, 1910, and the consideration recited in the deed was $250. The deed conveyed to the Martin Stave Company "all the oak timber suitable to make staves or stave bolts," growing on the land described in the deed. Red oak was not at that time considered suitable for making stave bolts.

A. J. Carter testified for the defendant: I have been engaged in the stave business for about thirty-five years, and have been manufacturing staves in Columbia County for about eight years. Red oak is suitable for making staves or stave bolts, and I have been using it for that purpose since I have been in the county.

Dave Fullenwider testified: I have been engaged in buying and manufacturing oak timber into staves and stave bolts fifteen years. Prior to September, 1910, red oak timber had not been used in Columbia County for making staves and stave bolts. Prior to that time all oak timber suitable for staves and stave bolts was practically white oak timber. In buying oak timber suitable for making staves and stave bolts, it was generally understood between the parties engaged in that business that it had reference to white oak and its species. Somewhere along about July, 1910, people began to inquire

about red oak staves, and that was the first time that people engaged in the stave business in this section of the country made any inquiry about using red oak to make staves and stave bolts.

The chancellor found in favor of the defendant and dismissed the complaint for want of equity, and the plaintiff has appealed.

*C. W. McKay*, for appellant.

1. If this were a suit to reform the deed of appellant to appellee, then with testimony like this a court of equity would reform the deed so that it would convey only the white oak timber and species standing on the land. 89 Ark. 310; 71 *Id.* 614; 82 *Id.* 226.

2. Notice to Joe Jean was notice to appellee. 98 Ark. 379; 31 Cyc. 1587.

3. On account of the mistake in the deed no title to red oak timber passed to appellee. Equity acquired jurisdiction on account of the mutual mistake in the description of the property sold. 2 Pom., Eq. Rem., § 683.

4. Parol evidence of a mistake is admissible in all cases. 2 Pom., Eq. Rem., § 682.

*W. H. Askew*, for appellee.

1. A new issue can not be raised here for the first time. No issue as to fraud or mistake was raised. 95 Ark. 593; 90 *Id.* 59; 88 *Id.* 189; 94 *Id.* 378; 94 *Id.* 390-392.

2. No material allegation of the complaint was sustained by the law or evidence. To reform a deed for mistake or fraud the evidence must be mutual and decisive. 104 Ark. 475-484; 102 *Id.* 326; *Ib.* 575-579; 83 *Id.* 131.

3. The only issue in this case is as to the meaning of the expression, "all oak timber suitable to make staves or stave bolts." The testimony of Dean and Doss was inadmissible. 4 Wig. on Ev., p. 3394, § 2415 B. (a), 105 Ark. 455-458.

4. The only question is whether or not red oak is covered by the description used. 102 Ark. 428; 88 *Id.*

213; 99 *Id.* 218; 95 *Id.* 131; 94 *Id.* 130; 83 *Id.* 283-7; 102 *Id.* 326-334.

5. There is no general prayer for relief in the complaint. 90 Ark. 241-245.

6. Is red oak timber *suitable* for staves or bolts? This is vital. 7 Words & Phrases, 6780; 69 Fed. 93; 15 Pa. 371-379.

HART, J., (after stating the facts). Counsel for the defendant seeks to uphold the decree on the authority of *Hearin* v. *Union Sawmill Company*, 105 Ark. 455; but we do not think that case is an authority for him. There the deed conveyed "all the pine and oak timber ten inches and up." It was contended by the seller that this did not embrace the old field pine which was on the land. Among the reasons given was, that at the time the timber deed was executed it was not profitable to cut old field pine. We held that the language of the deed aptly included every kind of pine on the land. There the deed did not purport to convey merchantable timber, but purported to convey all the pine and oak timber ten inches and up. Old field pine was covered by this description, and we held that, to allow the seller to show by parol proof that it was not so intended would be to contradict or vary the terms of the deed. There the description referred to the size of physical characteristics of the timber, and to have allowed parol evidence to show to the contrary would have contradicted the terms of the deed. Here the language of the deed is "all the oak timber suitable to make staves or stave bolts." The word "suitable," as defined in the dictionaries, means: "Fit, proper or adapted." So that it will be seen that the word referred not only to the physical characteristics of the timber but to its fitness for making staves and stave bolts. According to a preponderance of the testimony, it was not thought or understood in that community at the time the timber deed was executed that red oak timber was suitable for making staves and stave bolts. More-

over, the undisputed testimony shows that the plaintiff and the agent of the defendant who bought the timber for it both understood that red oak timber was not suitable for making staves and stave bolts and that only white oak timber and its species was suitable for that purpose. The rule is that, where the contract contains words of latent ambiguity or where technical terms are used or terms which by custom and usage are used in a sense other than the ordinary meaning of the words, oral testimony is admissible to explain the meaning of the terms or words used. *Paepcke-Leicht Lumber Company* v. *Talley*, 106 Ark. 400. In that case it was also said that every legal contract is to be interpreted in accordance with the intention of the parties making it; and usage, when it is uniform and well settled, and is not in contradiction of the expressed terms of the contract, is deemed to form a part of the contract and to enter into the intention of the parties. As we have already seen, the plaintiff and the agent of the defendant who made the contract for it both testified that it was not their intention to include the red oak timber and that it was not considered suitable for making staves and stave bolts in that community at the time the contract was executed. It may be also said that a preponderance of the evidence showed that at the time the contract was executed red oak timber, according to the custom of the community, was not considered suitable for making staves and stave bolts and was not used for that purpose.

In addition to this, J. L. Jean, who acted as agent for the defendant in purchasing the timber, testified that subsequent to the execution of the timber deed he purchased the timber from the defendant at the price it had paid for it. In other words, he testified he had an understanding and agreement with the Martin Stave Company that he would take the timber off of its hands at the price it had paid for it. This contract was not in writing, but Jean stated that, pursuant to its terms, he cut the timber, which it was understood was embraced in

the contract, and paid the defendant for it.  His testimony in this regard is uncontradicted.  So it may be said that the undisputed testimony shows that the defendant made a verbal contract for the sale of the timber which it had purchased from the plaintiff and that pursuant to its terms Jean took possession of the timber and paid the purchase money.  The facts proved as to the payment of the purchase money for the timber by Jean and the taking possession of the timber by him met every requirement of our decisions as to the part performance of a parol contract necessary to give Jean the right to specific performance.  *Arkadelphia Lumber Company* v. *Thornton,* 83 Ark. 403.

Jean says that he did not demand any deed from the Martin Stave Company because he had cut all the timber from the land that he was entitled to under the deed from the plaintiff to the Martin Stave Company. The Martin Stave Company entered upon the land after it had made this contract with Jean and cut the red oak timber from it.  It does not make any difference that Jean did not bring suit for specific performance as he was entitled to do.  He is not making any claim to the red oak timber, and the Martin Stave Company is not entitled to the red oak timber, because, under the undisputed testimony, it had conveyed to Jean all the timber that it had purchased from the plaintiff.  Therefore, it had no right to cut the red oak timber and is liable to the plaintiff for it.  The undisputed evidence shows that the defendant cut seventy-five and one-half cords of red oak timber and that the value of this red oak was three dollars per cord.  The chancellor should have found for the plaintiff, and for the error in not doing so the decree will be reversed, and inasmuch as the cause has been fully developed, a decree will be entered here in favor of the plaintiff for the sum of $226.50.