VANCE CUPP, JR., ADMINISTRATOR *v.* POCAHONTAS FEDERAL
SAVINGS & LOAN ASSOCIATION ET AL

5-4235                                                414 S. W. 2d 596

Opinion delivered May 8, 1967
[Rehearing denied June 5, 1967.]

*Kirsch, Cathey & Brown,* for appellant.

*Vernon J. King,* for appellees.

CONLEY BYRD, Justice. Appellant, administrator of
the estate of J. D. Nolen, brings this appeal primarily
for the benefit of Mr. Nolen's children by his first wife,
in order to determine the right of ownership of two sav-

ings accounts carried by Mr. Nolen at the time of his death. Appellees are the Pocahontas Federal Savings & Loan Association, Mary E. Mondy and Maggie Burkeen, and Mary E. Mondy, administratrix of the estate of Thucie Nolen, deceased.

The record shows that some time in 1935 J. D. Nolen divorced Mary Nolen, mother of his five children, and shortly thereafter married Thucie Nolen, with whom he lived until his death on April 15, 1965. On January 20, 1961, he established, among others, account No. 4706 in the joint names of himself and Thucie Nolen "as joint tenants with right of survivorship and not as tenants in common." On January 6, 1964, he established account No. 6035 in the name of "J. D. Nolen, payable in case of death to Thucie Nolen." Account No. 4706 has $10,000 therein and account No. 6035 has a balance of $9,903.90.

With respect to account No. 4706, appellant contends that the disposition of the account is not controlled by section 38 of Act 227 of 1963, but by section 1 of Act 343 of 1939; and that the record clearly shows that J. D. Nolen did not intend to create a joint and survivorship account in favor of Thucie Nolen.

Appellees contend that, although the account was created before the effective date of Act 227 of 1963 (Ark. Stat. Ann. § 67-1838 [Repl. 1966]), the act is curative in nature and the account is controlled by the later act. In the alternative, appellees contend that even if Act 343 of 1939 is the controlling statute, there is ample proof to sustain the chancellor's finding that Mr. Nolen intended to create a joint and survivorship account.

We agree with appellant that accounts such as No. 4706 established under Act 343 of 1939 and prior to the effective date of Act 227 of 1963 would be controlled by the interpretation given to Act 343, unless the person owning the account made some change therein after the effective date of the 1963 act, as was the case in *Harris*

v. *Searcy Fed. Savings & Loan Ass'n,* 241 Ark. 520, 408 S. W. 2d 602 (1966). Under the interpretation given to Act 343 of 1939 and the similar banking act, Acts 1937 No. 260 § 1 (Ark. Stat. Ann. § 67-521 [Repl. 1966]), the determination of ownership by the survivor of such account depends upon the intent of the depositor. *Park v. McClemens, Ex'r,* 231 Ark. 983, 334 S. W. 2d 709 (1960).

The record shows that prior to January 20, 1961, J. D. Nolen had had other savings accounts, some of which were carried in his and Thucie's names as joint tenants with right of survivorship. On January 20, 1961, he closed out accounts Nos. 3801, 4108, 4109, 4110, 4111, 4112 and 4113, and opened the following accounts:

"No. 4701 J. D. Nolen and/or Robert Nolen as joint tenants with the right of survivorship and not as tenants in common.          $5,000.00

No. 4702 J. D. Nolen and/or Ethel Davis as joint tenants with right of survivorship and not as tenants in common.          $5,000.00

No. 4703 J. D. Nolen and/or Martha Davis as joint tenants with right of survivorship and not as tenants in common.          $5,000.00

No. 4704 J. D. Nolen and/or Gladys Watson as joint tenants with right of survivorship and not as tenants in common.          $5,000.00

No. 4705 J. D. Nolen and/or Fred Nolen as joint tenants with right of survivorship and not as tenants in common.          $1,500.00

No. 4706 J. D. Nolen and/or Thucie Nolen as joint tenants with the right of survivorship and not as tenants in common.          $9,679.10"

On each of the accounts in the name of J. D. Nolen and his children, he had the following notation typed by the teller: "Make all withdrawals to *J. D. Nolen only* until his death." No such notation was made on account No.

4706 in the name of J. D. Nolen and Thucie Nolen.

In July and August of 1963, J. D. Nolen withdrew $4,000 each from account Nos. 4701, 4702, 4703 and 4704, and gave the money to his children. To Fred Nolen, in lieu of the $4,000, he gave some land which he valued at $4,000, and obtained a receipt therefor. On January 4, 1964, Mr. Nolen closed out accounts Nos. 4701 through 4705 and on the same day established account No. 6035, above mentioned, which was opened in the name of "J. D. Nolen, payable in case of death to Thucie Nolen." At that time he also withdrew $4,666.43 from account No. 4706 (leaving a balance therein of $10,000) and deposited same in account No. 6035.

Opposed to this evidence, appellant shows that when J. D. Nolen and Thucie were married in 1935, an antenuptial agreement was entered into; that deceased had consistently stated that he did not intend for any woman to keep his children from getting his property and that after Thucie died the property would belong to his children.

We think the testimony on Mr. Nolen's intent to create a survivorship account with his wife, Thucie, in account No. 4706 is ample to sustain the chancellor's finding.

With respect to account No. 6035, appellant makes a number of contentions, all based on Ark. Stat. Ann. § 67-1838(5) (Repl. 1966), which reads as follows:

"If a person opening or holding a savings account shall EXECUTE and FILE with the association A DESIGNATION that on the death of the person named as holder, the account shall be paid to or held by another person or persons, the account, and any balance thereof which exists from time to time, shall be held as a payment on death account and unless otherwise agreed between the person or persons opening the account and the association:

(a) Upon the death of the holder of the account, the person or persons designated by him and who have survived him shall be the owners of the account . . . and any payment made by the association to any of such persons shall be a complete discharge of the association as to the amount paid;'' (Emphasis supplied.)

Appellant's first contention is that the statute was passed to afford protection to savings and loan associations and should not be construed as affecting substantive rights of contesting claimants to the deposit. This contention is based somewhat on the proposition that the legislature does not possess the constitutional power to declare what shall be conclusive evidence of a fact, as such a declaration would invade the power of the judiciary. Coupled with this contention is the contention that if the statute be construed as creating property rights, it is clearly in conflict with the Statute of Wills.

We disagree with appellant. Obviously, the legislature was aware of the interpretations which this court had given to Act 343 of 1939 and the comparable banking act, Ark. Stat. Ann. § 67-521 (Repl. 1966). In subsection 5(a) of section 38 of the act, it unequivocally states that a person so designated who survives the depositor shall be the owner of the account. Nor do we find any merit in the contention that to so interpret the act would make it unconstitutional. While we have recognized that the legislature can not declare one fact conclusive evidence of another material fact in controversy, such is not the situation involved here. It is perfectly permissible for the legislature to declare the legal effect of doing certain acts. The legislature declared only what the legal effect of executing and filing with the association such a designation would be—namely, to make Thucie Nolen the owner of the account as between heirs and devisees of the holder thereof. We have many similar statutes, such as a statute giving a materialman a lien upon the filing of notice within a certain number of days after he has performed work.

While the effect of Ark. Stat. Ann. § 67-1838(5) is to take such savings and loan accounts out of the operation of the Statute of Wills, we know no reason why the legislature is prohibited from doing so. Both statutes are creatures of the legislature. In this situation the intention of the legislature is clearly stated. While some argument has been made with reference to the repealing section and the emergency section that the legislature was here dealing only with savings and loan associations and not intending to affect property rights, such arguments fall by the wayside when we consider that the legislature has also passed Act 78 of 1965, making the identical provisions applicable to banks in general, and clearly repealing all laws and parts of laws in conflict therewith. We are not here concerned with the rights of creditors nor with what procedure should be followed on such accounts in the event of an insolvent estate.

Lastly, appellant argues that J. D. Nolen did not comply with the terms of subsection 5 of section 38 of the act in executing and filing a designation with the savings and loan association. This contention is made on the basis that the signature card contained only the name of J. D. Nolen and the signature of J. D. Nolen. There was also testimony by numerous interested parties that the account book carried only the name of J. D. Nolen. However, the account was carried by the association on its ledger as "J. D. Nolen, payable in case of death to Thucie Nolen," and the proxy card signed by J. D. Nolen carried the same notation as the ledger sheet. While perhaps it would have been better for the association to have used a card designed solely for the purpose of complying with the statute, we can not say that the proxy card does not comply with the requirements of the statute. All the statute actually requires is that the person holding the account "shall EXECUTE and FILE with the association A DESIGNATION. . . ." To hold that the proxy card did not comply with the statute would be adding a formality to the establishment of such an account that is not contained in the statute.

For the reasons stated, we affirm the judgment of the trial court.

HARRIS, C. J., and BROWN and FOGLEMAN, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I dissent from the holding of the majority affirming the award of the proceeds of Account No. 6035 to the estate of Thucie Nolen.

In the first place, I cannot find any compliance with Ark. Stat. Ann. § 67-1838 (5) (Repl. 1966) on which to base the holding. I cannot find an execution and filing of a designation in the proxy card. It is to be noted that the chancellor did not find that there was a designation executed and filed by Nolen on this account, but based his finding on evidence of Nolen's intention. Intention of the account holder is not sufficient unless the expression thereof is executed and filed. While the statute does not prescribe a form of designation, surely there must be some expression of intention therein on the part of the party opening it to create such an account. The proxy card does not purport to do this. It only purports to be a continuing revocable proxy vesting J. D. Nolen's voting power as a *member of the association* in the President of the association. Only two instruments were executed by Nolen, the proxy card and a signature card. The latter constitutes an application for membership and a savings share account. Nowhere is there any mention of Thucie Nolen's name or any indication that Nolen intended the account for which he then applied, to be payable on death to anyone.

If there was any one of the documents prepared at the time this account was opened about which a lesser degree of care would be exercised, it would be the proxy card. The employee of the association who attended to the opening of this account said that Mr. Nolen never had any trouble reading papers involved in the transaction of his business. She opined that he was familiar

with a proxy and its function so that she felt it unnecessary to explain it to him. He certainly had many experiences in the opening and closing of accounts. It only stands to reason that he knew that the signature card was the basis of the opening of the account and that the proxy was for the benefit of management instead of his own. Consequently, he or any other prudent person would be very attentive about the correctness of the signature card but prone to be careless about the proxy card. This seems particularly true when the documents were executed virtually simultaneously.

I would reverse the lower court on the part of the decree relating to Account No. 6035.

I am authorized to state that HARRIS, C. J., and BROWN, J., join in this dissent.