Miss Linda Ellen SNOW and
Mrs. Dale Loyd SMITH *v.*
Marjorie T. MARTENSEN

74-300                      522 S.W. 2d 371

Opinion delivered April 7, 1975
[Rehearing denied May 12, 1975.]

*Crouch, Blair, Cypert & Waters,* for appellants.

*Jones & Segers,* for appellee.

J. Fred Jones, Justice. This is an appeal by Miss Linda Ellen Snow and Mrs. Dale Loyd Smith from a Washington County Probate Court judgment holding the appellee, Marjorie T. Martensen, to be the surviving joint tenant, and therefore sole owner, of a savings account in the approximate amount of $70,000 deposited with the First Federal Savings

and Loan Association of Fayetteville in the names of Blanche M. Box and Marjorie M. Martensen.[1]

The facts appear as follows: Mrs. Blanche M. Box was 83 years of age when she died testate in Washington County, Arkansas, on October 17, 1971. She left as her sole surviving heirs, one daughter, the appellee Marjorie T. Martensen, and two granddaughters, the appellants Linda Ellen Snow and Joan Snow Smith.

Mrs. Box was living in California when she executed her last will and testament on March 10, 1969, and the pertinent provisions of the will read as follows:

"FIRST: I revoke all Wills and Codicils that I have previously made.

SECOND: I declare that I am married to JOHN V. BOX and all references in this Will to 'my husband' are to him. I have one child now living, my daughter, MARJORIE T. MARTENSEN. I have one deceased child, my daughter, MARY J. SNOW, who was survived by her daughters, LINDA ELLEN SNOW and JOAN ELIZABETH SNOW. Both of my children are the children of my former marriage. I have no other children, living or deceased.

THIRD: I give and bequeath all my jewelry to my daughter, MARJORIE T. MARTENSEN. If she fails to survive me this bequest shall fail.

FOURTH: I give, devise and bequeath the residue of my estate, real and personal, wherever situated, including all failed and lapsed gifts, as follows:

(a) One-half (½) thereof to my daughter, MARJORIE T. MARTENSEN. If she fails to survive me, I give all such property to her lawful issue who survive me on the principle of representation.

(b) One-fourth (¼) thereof to my granddaughter,

---

[1]Marjorie T. and Marjorie M. are one and the same person.

LINDA ELLEN SNOW.

(c) One-fourth (¼) thereof to my granddaughter, JOAN ELIZABETH SNOW.

\* \* \*

SEVENTH: I nominate and appoint my husband as Executor of this Will, to serve without bond. If my husband shall for any reason fail to qualify or cease to act as Executor, I nominate and appoint CARL J. SCHUCK as Executor of this Will, to serve without bond. The term 'Executor' as used in this Will shall include any personal representative of my estate. I authorize my Executor to sell or lease such property of my estate as may be necessary or advisable, subject to confirmation as may be required by law and to hold, manage and operate any business belonging to my estate at the risk of my estate. I authorize and empower my Executor to invest and reinvest my estate to the extent permitted by law in such investments as are authorized by the provisions of California Civil Code Section 2261 or any subsequent statute of similar import."

Mrs. Martensen went to California and returned to her home in Fayetteville with her mother, Mrs. Box, about October 1, 1971. Mrs. Box's husband, John V. Box, died after the will was executed. Following the death of Mrs. Box, Mr. Schuck renounced his right to appointment as executor under the will and Mrs. Martensen was appointed administratrix with will annexed. Mrs. Martensen filed her inventory on May 10, 1973, showing no real estate, and personal property totaling $786.00 itemized as follows:

"Miscellaneous personal effects                           $   50.00
One (1) old style round cut diamond ring,
2.20 carats with four small
diamond melee                                                       696.00
One (1) 14 kt. yellow gold bracelet                          25.00
One (1) 14 kt. yellow gold bee pin                        15.00"

The appellants filed objections to the inventory filed by

940

the appellee. They contended that the savings account here involved constituted assets of the decedant's estate to be administered under her will. Mrs. Martensen contended first that the amount in the savings account was a gift to her and, second, that the savings account belonged to her as the surviving joint tenant with right of survivorship. The probate judge agreed with Mrs. Martensen on her second contention and on appeal to this court the appellants have designated the following points for reversal:

> "The probate court erred in holding that Arkansas law does not require a designation in writing to create a joint-tenancy with right of survivorship in a savings account held in a savings and loan.
>
> The probate court erred in failing to hold that even if Ark. Stat. 67-1838 (1) does not on its face require a designation in writing, that that statute has been amended and/or repealed either directly or by implication by Act 78 of 1965 (Ark. Stat. 67-552).
>
> The probate court erred in failing to hold that Section 1 of Ark. Stat. 67-1838 as far as it attempts to make the doing of an act conclusive evidence of another act or of an intention is invalid.
>
> The probate court erred in failing to hold that an account with a savings and loan is a contract and since the signature card (appellants' exhibit A) was never signed by Blanche Box (and in fact, there was no evidence that it was ever seen by her), Blanche Box is not bound by the language on the signature card nor is she an applicant for the opening of a joint account as stated on the signature card."

We find no merit to the appellants' first two points.

In *Willey, Adm'r* v. *Murphy,* 247 Ark. 839, 448 S.W.2d 341, we had under consideration a savings account in a savings and loan association under Ark. Stat. Ann. § 67-1838 (Repl. 1966) and also certificates of deposits in the Peoples Bank and Trust Company of Russellville under Ark. Stat.

Ann. § 67-552 (Repl. 1966). The savings and loan certificate for $8,000 was issued to Pearl Bailey or V. A. Murphy. The evidence was to the effect that both Mrs. Bailey and Mr. Murphy went to the savings and loan association office and opened the account with Mrs. Bailey's money. A deposit slip and signature card were in evidence in that case and the signature card designated Mrs. Bailey and Murphy as joint tenants with right of survivorship. Mrs. Bailey died and the trial court held, in a suit between Murphy and the administrator of Mrs. Bailey's estate, that the savings account belonged to Murphy and we affirmed citing § 67-1838, as follows:

> " 'If the person opening such savings account fails to designate in writing the type of account intended, or if he designates in writing to the association that the account is to be a 'joint tenancy' account or a 'joint tenancy with right of survivorship' account, or that the account shall be payable to the survivor or survivors of the persons named in such account, then such account and all additions thereto shall be the property of such persons as joint tenants with right of survivorship.' "

On the same date the account was opened with the savings and loan association, Mrs. Bailey and Mr. Murphy went to the Peoples Bank and Trust Company of Russellville and opened an account there through certificates of deposit. The certificates were stamped "as joint tenants with right of survivorship and not tenants in common." An executive officer of the bank testified that Mrs. Bailey introduced Mr. Murphy to him and told him she wanted the certificates issued in both names, and that he assumed she wanted it in a normal wording of a joint account with right of survivorship. He said he misplaced Mr. Murphy's name and upon so advising Mrs. Bailey, she again advised him to issue the certificates in her name and the name of Mr. Murphy. The trial court found that the two bank certificates were not issued in the form required by law to vest title in Murphy as survivor. We affirmed the trial court and in doing so quoted § 67-552, as follows:

> " 'If the person opening such account, or purchasing

such certificate of deposit, designates in writing to the banking institution that the account or the certificate of deposit is to be held in 'joint tenancy' or in 'joint tenancy with right of survivorship,' or that the account or certificates of deposit shall be payable to the survivor or survivors of the persons named in such account or certificate of deposit, then such account or certificate of deposit and all additions thereto shall be the property of such persons as joint tenants with right of survivorship.' "

As to the bank certificates in *Willey, supra,* we relied on *Cook* v. *Bevill,* 246 Ark. 805, 440 S.W.2d 570, where we said that there must be a substantial compliance with the "designation in writing" requirement of the Act in order to effect survivorship.

In *Cook* v. *Bevill, supra,* we traced the history of § 67-552 as relating to joint accounts in banks and stated that Act 260 of 1937 (§ 67-521 before amendment) had a two-fold purpose. "It protected the bank in making payments from deposits in the names of any two persons; and it declared 'a definite and conclusive relation of the parties to such deposit on the death of either.' " Citing *Pye* v. *Higgason,* 210 Ark. 347, 195 S.W.2d 632. We then pointed out in *Bevill* that Act 78 of 1965, Ark. Stat. Ann. § 67-552 (Repl. 1966), "was our first comprehensive enactment governing joint bank accounts." In *Bevill* we then continued:

"Two years previously a very similar act was passed affecting joint deposits in savings and loan associations. See Ark. Stat. Ann. § 67-1838 (Repl. 1966). The principal virtue of Act 78 is the requirement of *designation in writing;* that is, when an account is opened or a certificate of deposit is issued in the name of two or more persons, a written designation is made as to the investiture of title."

We are unable to read into Act 78 of 1965, § 67-552, an amendment of § 67-1838. Section 67-552 is under Chapter 5 of the statutes pertaining to "Powers of Banks" and only banking institutions are mentioned therein. This section

simply reads in part as follows:

> "Checking accounts and savings accounts may be opened and certificates of deposit may be issued by any banking institution with the names of two [2] or more persons, either minor or adult, or a combination of minor and adult, and such checking accounts, savings accounts and certificates of deposits may be held:

> (a) If the person opening such account, or purchasing such certificate of deposit, designates in writing to the banking institution that the account or the certificate of deposit is to be held in 'joint tenancy' or in 'joint tenancy with right of survivorship,' or that the account or certificates of deposit shall be payable to the survivor or survivors of the persons named in such account or certificate of deposit, then such account or certificate of deposit and all additions thereto shall be the property of such persons as joint tenants with right of survivorship."

Ark. Stat. Ann. § 67-1838 (Repl. 1966) is under an entirely different Chapter 18 of the statutes applying to "Savings and Loan Associations" and the pertinent portion of this statute simply reads as follows:

> "Savings accounts may be opened in any association or a federal association in the names of two [2] or more persons, either minor or adult, or a combination of minor and adult, and such savings accounts may be held:

> (1) If the person opening such savings account fails to designate in writing the type of account intended, or if he designates in writing to the association that the account is to be a 'joint tenancy' account or a 'joint tenancy with right of survivorship' account, or that the account shall be payable to the survivor or survivors of the persons named in such account, then such account and all additions thereto shall be the property of such persons as joint tenants with right of survivorship."

It is not necessary to attempt to determine the intent of

the Legislature in making such broad distinction in "accounts and certificates of deposits in two or more names" when dealing with a banking institution and "savings accounts in the names of two or more persons" when deposited with a savings and loan association. Regardless of the intent of the Legislature, the language is plain. The practical effect of § 67-1838 is that if an individual opens an account in a savings and loan association in the names of two or more persons and fails to designate in writing to the association that the account is to be a "tenant in common" account (§ 67-1838 [3]), then the account and all additions thereto shall be the property of such persons as joint tenants with right of survivorship. In other words, as the law now stands, if the account is opened in a banking institution, a joint account with right of survivorship shall be designated in writing; whereas, if the account is opened in a savings and loan association, the account becomes a joint account with right of survivorship unless a contrary intent is so designated.

In support of appellants' third point they rely on *Cupp, Adm'r v. Pocahontas Fed. S. & L.*, 242 Ark. 566, 414 S.W.2d 596, but in that case we said:

"While we have recognized that the legislature can not declare one fact conclusive evidence of another material fact in controversy, such is not the situation involved here. It is perfectly permissible for the legislature to declare the legal effect of doing certain acts. The legislature declared only what the legal effect of executing and filing with the association such a designation would be — namely, to make Thucie Nolen the owner of the account as between heirs and devisees of the holder thereof."

The appellants' fourth point gives us considerable difficulty in light of the record in this case. We fully appreciate the difficulty confronting the probate judge in the trial of this case because by far the majority of the 294 page record consists of objections to exhibits and testimony, and the court's rulings thereon. When the competent evidence is gleaned from the objections overruled, the facts, as they relate to the immediate question before us, appear as follows: Mrs. Box

was living in California when she executed her will on March 10, 1969. Sometime between January, 1971, and October, 1971, Mrs. Box decided to move to Fayetteville, Arkansas to live with her daughter and son-in-law, Mr. and Mrs. Martensen. It is not clear from the record exactly when Mrs. Box came to Arkansas but according to Mr. Martensen's testimony, it was apparently around October 2, 1971. Mrs. Box had $70,000 on deposit in three separate savings and loan associations in California which were transferred to the First Federal Savings and Loan Association of Fayetteville.

Mr. Martensen testified that he and Mrs. Martensen went to California (apparently in September, 1971) and upon his return to Fayetteville, he made arrangements with the First Federal Savings and Loan Association to obtain the proper documents to effect the transfer of Mrs. Box's funds in California to the First Federal Savings and Loan Association of Fayetteville. He said he obtained several blank combination letter-draft forms from Mr. Eason, president of First Federal Savings and Loan Association, and took the blank forms to his home. He said that on October 2, 1971, after Mrs. Martensen arrived from California with Mrs. Box, that Mrs. Box signed the forms in his presence. In this connection Mr. Martensen testified as follows:

"Q. What did you do with these documents after you obtained them in blank from the Federal Savings and Loan Association, Mr. Martensen?

A. These blank documents here?

Q. Yes, sir.

A. These were taken to my home prior to my wife's arrival with Mrs. Box, which I left California a week, four or five days before.

Q. So, you took them to your house?

A. Yes, sir.

Q. All right. What happened after that?

A. After Mrs. Box was there she went through a process of cleaning out, cleaning house, settling down in the home, sending out her laundry and that type of thing."

Mr. Martensen then said that on Saturday morning, after the mail came, Mrs. Box signed the instruments in his presence. He then continued as follows:

"Q. What happened after that, Mr. Martensen?

A. The documents were signed. The books were handed to me by my wife who had them on the way from California. I took them to the office.

Q. These documents were signed by whom?

A. Mrs. Box.

Q. Who was present when she signed them?

A. My wife, myself and Mrs. Box."

Mr. Martensen said that after Mrs. Box signed the instruments and handed them back to him, he took them to his office and put them in the safe together with the California passbooks which his wife had in her possession and gave to him. He said he was planning to return to California on Monday morning, October 4, in connection with the house in California, and on that morning he took the documents signed by Mrs. Box to Mr. Eason at the savings and loan association. He said that from then on it was in the hands of Mr. Eason. The instruments so referred to were simply printed form letters bearing sight draft form designed for use by savings and loan associations in obtaining transfer of funds. The letter portion was a request for transfer signed by Mr. Eason as president of First Federal and the sight draft was to be signed by the depositor or owner of the funds. Mr. Martensen testified that Mr. Eason sent the draft to California and when the money was received by First Federal Savings and Loan Association, Mr. Eason called him. He said all the blank forms he obtained from Mr. Eason bore an "x" mark where they were to be signed by Mrs. Box and that

he, Martensen, did not make the small "x" marks on the instruments where Mrs. Box was supposed to sign.

Mr. A. P. Eason, Jr., testified that he was president of the First Federal Savings and Loan Association of Fayetteville and had been since it was formed in 1953. He testified by deposition that Mr. and Mrs. Martensen were customers of his association and he recalled Mr. and Mrs. Martensen coming in and discussing with him the transfer of the accounts from California to Fayetteville. He said he did not recall whether Mrs. Box was present or not. He said that Mr. and Mrs. Martensen did request a transfer of the funds. He said he did not remember the exact date of the request and would have to rely on the date of the correspondence with the California institutions in connection therewith. He said upon Mr. Martensen's request he furnished him the regular draft forms used for such purposes and which the association prepares for withdrawals from another association. He said it was necessary for the holder of the account to sign the draft form and that signatures purporting to be those of Mrs. Box appeared on the forms when they were returned to him. He said after sending the instruments together with the passbooks to the savings and loan associations in California, he received drafts made payable to the First Federal Savings and Loan Association of Fayetteville. He said that upon receipt of the money from the California institutions, he called the Martensens or Mrs. Box, he did not remember which, and as a result of the conversation, he deposited the funds to the joint account. Mr. Eason then testified as follows:

> " 'Exhibit D' and that has previously been identified as the signature card and introduced in evidence by the petitioners, '—contains only the signature of Mrs. Martensen, can you explain why that was?
>
> Answer: When the money came in, I called and told them that it was here, and Marg came by, and signed the card, and said her mother would be by in a few days, that she was sick.' "

Mr. Eason testified that it was quite common for one person

to come in and open a joint account and sign a signature card and the other party to the account not do so. In this connection he said:

"'... this again is quite common, we will have many times the parents and children open accounts; it works both ways; the children will say, 'Mamma will come by, and sign the card next week,' and by the same token, the parents will come in and open an account, and say, 'My son is in South America, or Florida, and he's going to do this, and in two or three months he will be by and sign the account.' ' "

Mrs. Martensen's testimony was primarily directed to the identification of her mother's signature on the instruments involved, but the genuineness of Mrs. Box's signature on the draft forms is not really questioned in this case. The so-called signature card which was placed in evidence as plaintiff's exhibit 8 was more than a mere "signature card." It was the only documentary evidence of instructions to First Federal Savings and Loan Association of Fayetteville in opening the savings account. This form, as filled out by First Federal and signed by Mrs. Martensen, appears as follows:

|  |  |  | Account No. 2-520 |
|---|---|---|---|
| A. |  |  |  |
| and B. | Box | Blanche | M. and |
| and C. | Martensen | Marjorie | M. |

Type All Names: (Last Name) (First Name) (Middle Name)

as joint tenants with right of survivorship and not as tenants in common, and not as tenants by the entirety, the undersigned hereby apply for a savings account in

FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF FAYETTEVILLE

and for the issuance of evidence thereof in their joint names described as aforesaid. You are directed to act

pursuant to any one or more of the joint tenants' signatures, shown below, in any manner in connection with this account and, without limiting the generality of the foregoing, to pay, without any liability for such payment, to any one or the survivor or survivors at any time. This account may be pledged in whole or in part as security for any loan made by you to one or more of the undersigned. Any such pledge shall not operate to sever or terminate either in whole or in part the joint tenancy estate and relationship reflected in or established by this contract. It is agreed by the signatory parties with each other and by the parties with you that any funds placed in or added to the account by any one of the parties *are and shall be conclusively intended* to be a gift and delivery at that time of such funds to the other signatory party or parties to the extent of his or their pro rata interest in the account. You are authorized to accept checks and other instruments for credit to this account, whether payable to one or more of the parties, and to supply any needed endorsement. You are relieved of any liability in connection with collection of all items handled by you without negligence, and shall not be liable for acts of your agents, sub-agents or others or for any casualty. Withdrawals may not be made on account of such items until collected, and any amount not collected may be charged back to this account, including expense incurred, and any other outside expense incurred relative to this account may be charged to it. The official proxy committee of the institution is authorized in our absence to cast our vote or votes at any meeting of the members from year to year until this proxy is canceled in writing.

A

| Signature | (Type) | Street | City & State | Phone |

B /s/ Marjorie M. Martensen

| Signature | (Type) | Street | City & State | Phone |

C

| Signature | (Type) | Street | City & State | Phone |

Note: The correct way to establish a common law joint

tenancy or its equivalent in any state is to use 'and' in joining tenants' names on all evidence of the account. All tenants should sign this card. Rule out unused signature line."

The probate judge did his usual thorough job of sifting the evidence and applying the law in this case but on appeal to this court probate cases are tried de novo as are chancery cases[2] and we do not reach the same results that the probate judge did. In the first place there is no question but that the funds withdrawn from the California accounts were the personal funds of Mrs. Box, and there is no question that Mr. Eason knew the funds belonged to Mrs. Box when they were transferred to the First Federal Savings and Loan Association of Fayetteville. These funds were in the substantial amount of $70,000 and there is no evidence whatever that Mrs. Box ever directed Mr. Eason to deposit these funds in a joint account with Mrs. Martensen except, of course, the oral instructions he received from Mr. and Mrs. Martensen, and the written instructions he received from Mrs. Martensen on the so-called signature card. The withdrawal of the funds from the California institutions, and the method of doing so, are not really important to the case before us. The important point is not the *withdrawal* of the funds but the *redepositing* of the funds in the First Federal Savings and Loan Association of Fayetteville.

The trial court pointed out that the signature card itself bore the typewritten name of Blanche Box and Marjorie Martensen. The court then reasoned that the statute does not require affirmative *handwritten* designation but on the contrary used the term for designation "in writing" and provides only that if "the account stands in the name of two or more persons without any contrary indication, this is enough to make a joint survivorship operable." The court then cites and discusses *Cupp, Adm'r* v. *Pocahontas Fed. S. & L.,* 242 Ark. 566, 414 S.W.2d 596, and *Harris, Adm'r* v. *Searcy Fed. S. & L. Assn.,* 241 Ark. 520, 408 S.W.2d 602, and also *Willey, Adm'r* v. *Murphy,* 247 Ark. 839, 448 S.W.2d 341. In each of the three cases cited by the trial court, *the owner of the money actually open-*

---

[2]*State* v. *Snow,* 230 Ark. 746, 324 S.W.2d 532; *Mabry* v. *Corley,* 236 Ark. 306, 365 S.W.2d 711.

*ed the account,* but that is not the situation in the case at bar.

There is no question that the account as it stood on the books of the First Federal Savings and Loan Association when Mrs. Box died, was a joint account with right of survivorship simply by operation of law under the statute because it was in two names. The trial court pointed out that there is no evidence in the record to show that Mrs. Box did not know that the joint account was opened in her name and Mrs. Martensen's name; and, no evidence "that she wasn't at liberty to do whatever she wanted to about it, if she didn't like the savings certificates issued in that fashion." We agree with the trial judge on this point but we think it more important that there was no evidence in the record to show that Mrs. Box did know about it, or that she was aware of it. There is really no evidence that Mrs. Box knew anything at all between October 2, when the Martensens say she signed the drafts for the transferral of her funds to First Federal Savings and Loan Association of Fayetteville, and October 17 when she died. The so-called "signature card" in which Mrs. Martensen directed First Federal Savings and Loan to open the joint account was not dated but the certificates issued in compliance with the request, were dated October 12, only five days before Mrs. Box's death. Although Mrs. Box signed the drafts for the transfer of the funds at the Martensen home on October 2, she did not sign the undated signature card at all. It can reasonably be assumed that Mrs. Box and Mrs. Martensen's names were typed on the signature card at the time it was signed by Mrs. Martensen. Certainly there is no evidence that Mrs. Box typed her and Mrs. Martensen's names on the signature card.

Mrs. Martensen did not say whether Mrs. Box was too ill to sign the signature card at home as she had done in connection with the transfer drafts, but she did indicate to Mr. Eason that Mrs. Box was too ill to be with her and sign the card when the account was opened. According to Eason, she said Mrs. Box would by by a few days later and sign the signature card, but Mrs. Box died a few days later and there is no evidence that she ever appeared at First Federal Savings and Loan Association's office, or ever saw or talked to Mr. Eason.

We simply are unable to interpret § 67-1838, *supra,* as closing and locking the door behind a joint account with right of survivorship when once the money is deposited in two names and a receipt or passbook is issued thereon, *regardless of whose money is involved and who makes the deposit.* Of course, there was no fraud alleged and none proven in this case, but to uphold the judgment of the probate court under the strict construction of the statute here involved would create a situation wide open to fraud in exactly such factual situation as we have in this case. An old and senile person could simply say to another, "go deposit my funds in a savings and loan association," or "go transfer my funds from 'x' savings and loan association to 'y' savings and loan association," and, if the person so directed should deposit or transfer such funds in two names, there would simply be no question as to who owned the funds if the original owner should die; or as for that matter, if he should become totally incompetent before learning that his instructions had not been carried out. We are unable to believe that the Legislature intended such result.

Mrs. Box died less than two years after she executed the will under probate in this case. Mrs. Box made no change in her will by codicil or otherwise and there is no evidence that she ever considered doing so. According to the inventory filed by Mrs. Martensen, Mrs. Box owned no property whatever except miscellaneous personal property of the value of $50.00 to be divided equally between the appellants and the appellee, and the jewelry she bequeathed to Mrs. Martensen.

We are of the opinion and so hold, that "the person opening such savings account," as referred to in § 67-1838 (1), means the person who owns the money with which the account is being opened in the names of more than one person. The judgment is reversed and this cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

FOGLEMAN, J., dissents; BYRD, J., concurs.

JOHN A. FOGLEMAN, Justice, dissenting. I disagree with the result reached and with some of the observations made by the majority. I certainly do not agree that savings and loan associations are not protected by the present statutes. The real difference in legislation relating to banks, as construed by this court, and that relating to savings and loan associations is that no designation in writing is required for a "joint tenancy" account in a savings and loan association to fix ownership of the account as between the parties, but it is required for a bank account.

We should not reverse the probate court's judgment unless it is clearly against the preponderance of the evidence. It seems to me that this is what causes the majority's difficulty on appellant's fourth point. It seems to me that the point was not well taken. Mrs. Box could open an account with the savings and loan association without ever signing a signature card, insofar as any legal requirement is concerned. The only requirement that she sign a card is that of the association, which has a perfect right to waive it. Furthermore, it is not necessary that she ever see a signature card. I think that there is a clear preponderance of the evidence that Mrs. Box was an applicant for the opening of a joint account.

I find ample evidence that Mrs. Box opened the account. John Martensen, son-in-law of Mrs. Box, testified that when she died she was living with him and his wife. Through him, an exhibit not mentioned in the majority opinion and excluded by the probate judge was introduced. It was a memorandum written on one of the printed form letters used by First Federal Savings & Loan Association for the purpose of accomplishing a transfer of funds, to which was attached a draft for signature by the depositor. This memorandum was dated "02 Oct. 71" and bears the heading "MARTY TO DO" with the following enumeration:

1. BOOKS AND HOUSE TO BE JOINT WITH MARGY

2. CHANGE WILL SO MARGY WILL BE EXECUTOR

3. POWER OF ATTORNEY FOR MARTY SO HOUSE CAN BE CLOSED, MAINTAINED, AND RENTED AS NECESSARY

4. FIND OUT ABOUT CAR TITLE

This list extends beyond a perforation which enables one to separate the letter and the draft, and actually ends where the printing on the draft form begins. A line was run through most of the printed matter on the draft. The same signature that appears on the drafts actually used to transfer the accounts also appears on the signature line provided on the draft form. Martensen testified that this document was signed by Blanche M. Box in the presence of her daughter and Martensen at the same time she signed the drafts. The "top part" or enumeration was done by him in the presence of Mrs. Box, according to Martensen. Martensen said he had several conversations with his mother-in-law about the transfer of these accounts, beginning in January 1971 in Santa Monica, where Mrs. Box was then living and continuing by means of telephone, letters and visits in Santa Monica in June of 1971 and September 1971. Pursuant to these conversations, Martensen continued, he made arrangements for the documents to accomplish the transfers. After Mrs. Box arrived in Fayetteville, she delivered the passbooks for her California accounts to Martensen. At the time all the documents were signed, Martensen was planning to go to California to close Mrs. Box's house, put her furniture in storage and try to rent the house.

Martensen testified that after the memorandum was signed, Mrs. Box handed it to him along with the letters and drafts for the transfer of the accounts. He said he took them to his office along with passbooks which Mrs. Martensen had previously had in her possession and put them in his safe until Monday, October 4, when he took them to Eason at the office of the association. He stated that Eason called him when the necessary papers for the transfer were received by the association.

Eason specifically recalled having seen the memorandum. After receipt of it along with the letters and drafts, he

mailed the drafts to the California institutions. He took the memorandum to constitute an instruction to open the account as a joint account of Mrs. Box and her daughter.

A proffer of testimony by Martensen was made when the court sustained an objection. Martensen would have testified that Mrs. Box stated in the conversations he had with her that she wanted these funds transferred into a joint account in the names of herself and her daughter. He also would have testified, if the court had not sustained an objection, that Mrs. Box always referred to the savings and loan accounts as "books".

The trial court also sustained objections to the introduction of the exhibit, even though Eason stated that he saw it and acted upon it. An objection was also sustained to Eason's testimony that he clearly understood the instructions on the memorandum and that it is quite common for people to refer to accounts in savings and loan associations as books.

The proffered testimony did not come within the purview of the dead man's statute. The court sustained objections, not on the basis of this rule, however, but as hearsay. I frankly do not understand the basis of the court's holding that the exhibit was hearsay. It clearly established Martensen's authority to act as the agent of Mrs. Box in the matter of the "books". It was written and presented to the president of the savings and loan association by Martensen and this officer of the association acted upon it.

Insofar as this document and the conversations are concerned there was no effort to prove the truth of any facts stated by Mrs. Box. The proof was offered to show that the statements were made and if they were, they were certainly relevant. It was the veracity of Martensen that was in question, not that of Mrs. Box. Thus, this testimony is not hearsay. See *Motor Insurance Corp.* v. *Lopez*, 217 Ark. 203, 229 S.W. 2d 228. *Flaherty & Whipple* v. *State*, 255 Ark. 187, 500 S.W. 2d 87; *Liberto & Mothershed* v. *State*, 248 Ark. 350, 457 S.W. 2d 64; *City of Springdale* v. *Weathers*, 241 Ark. 772, 410 S.W. 2d 754.

Statements made by a principal tending to show the authority of an agent are not incompetent as hearsay. *Missouri Pacific Railroad* v. *Clements,* 225 Ark. 268, 281 S.W. 2d 936; *Flournoy* v. *Hewgley,* 234 F. 2d 213 (10th Cir. 1956); *Webb* v. *Webb,* 116 Utah 155, 209 Pac. 2d 201 (1949). Directions to an agent by his superior are not hearsay, but substantive evidence of the agent's authority or lack of it. *Powerine Co.* v. *Grimm Stamp & Badge Co.,* 127 Neb. 165, 254 N.W. 722 (1934).

Statements of the deceased to show her intentions were not inadmissible under the hearsay rule. *Crawford* v. *Center,* 193 Ark. 287, 100 S.W. 2d 83; *Webb* v. *Webb,* supra. *Flournoy* v. *Hewgley,* supra. See also *John Hancock Mutual Life Ins. Co.* v. *Menson,* 97 F. Supp. 320.

Where there is an ambiguity in language used or it is shown that words used by parties are commonly accorded a meaning different from their ordinary meaning, parol evidence is admissible to explain them, to show the way in which a particular term is understood commercially, or in a particular trade or business or in local popular and general use. *Paepcke-Leicht Lumber Co.* v. *Talley,* 106 Ark. 400, 153 S.W. 833; *Wilkes* v. *Stacy,* 113 Ark. 556, 169 S.W. 796; *Ft. Smith Appliance & Service Co.* v. *Smith,* 218 Ark. 411, 236 S.W. 2d 583; *Ellege* v. *Henderson,* 142 Ark. 421, 218 S.W. 831; *Taylor* v. *Union Sawmill Co.,* 105 Ark. 518, 152 S.W. 150; *McCarthy* v. *McArthur,* 69 Ark. 313, 63 S.W. 56; *Jackson County Gin Co.* v. *McQuiston,* 177 Ark. 60, 5 S.W. 2d 729; *Davis* v. *Martin Stave Co.,* 113 Ark. 325, 168 S.W. 553. Testimony of the parties to show the meaning of such terms is admissible. *Ellege* v. *Henderson,* supra. Parol evidence is also admissible in such circumstances to explain the situation and relation of the parties and the surrounding circumstances. *Clear Creek Oil & Gas Co.* v. *Bushmaier,* 165 Ark. 303, 264 S.W. 830.

I submit that all of the proffered testimony was admissible. When it is considered, it seems to me that the probate judge's decree was correct, even though he did not consider it.

On appeal in a chancery case, we consider evidence im-

properly excluded in the trial court. *Cox* v. *Smith*, 99 Ark. 218, 138 S.W. 978. As the majority points out, this appeal is governed by rules governing appeals in equity cases.

I would affirm the decree.

CONLEY BYRD, Justice, concurring. I cannot interpret Ark. Stat. Ann. § 67-1838 (Repl. 1966), as authorizing one not the owner of money to establish a joint account with right of survivorship until such time as the account has been acknowledged in writing by the owner. To do so would permit a legislative fiat which we said could not be done in *Cupp, Adm'r.* v. *Pocahontas Fed. S. & L.*, 242 Ark. 566, 414 S.W. 2d 596 (1967). Since appellee's contention would make the act void, it should be given a construction that would make it valid. Thus without Mrs. Box's signature, the statute cannot pass title to property.

For the reasons stated I only concur in the result.