Patricia PENN *v.* Dewey E. PENN et al

84-273                                          683 S.W.2d 930

Supreme Court of Arkansas
Opinion delivered February 11, 1985
[Rehearing denied March 25, 1985.]

*Ponder & Jarboe,* for appellant.

*Gardner & Steinsiek,* by: *James W. Steinsiek,* for appellees.

STEELE HAYS, Justice. This case turns on whether there was a sufficient designation in writing to comply with Ark. Stat. Ann. § 67-1838 (Repl. 1980), so that certificates of deposit belonged to the survivor, rather than to the estate of the decedent. The Chancellor found there was no right of survivorship. That finding was clearly erroneous and requires reversal.

The facts are not disputed. In 1979, Guthrie Penn, using $70,000 inherited from his mother, purchased two certificates of deposit from the First National Bank in Blytheville. When the CD's matured, he left $10,000 at the bank in a joint account with his daughter-in-law Patricia Penn, but because of a more favorable rate of interest at the Blytheville Federal Savings and Loan Association, he used $60,000 to purchase two $30,000 CD's from the savings and loan association. These CD's he also had issued to Guthrie Penn or Patricia Penn and they both signed a signature card relative to each CD stating that the account was held in joint tenancy with right of survivorship.

When the CD's matured thereafter Patricia Penn would surrender the old CD's and new CD's would be issued to Guthrie Penn or Patricia Penn to replace the matured CD's. No new signature cards were signed, the existing signature cards were simply altered with a white substance obliterating the old numbers and dates with new numbers and dates typed in. Guthrie Penn did not come to the savings and loan office on these occasions when the CD's were surrendered and reissued. The final two CD's were issued in October, 1982.

On December 10, 1982, Guthrie Penn died. Three days after his death, Patricia Penn surrendered the CD's and deposited the proceeds in a Memphis bank in her name and that of her husband. Appellees, who are five of Guthrie Penn's six children, sued Patricia Penn claiming the CD's belonged to the estate of their father and asking the chancery court to impose a constructive trust upon five/sixths of the proceeds. The Chancellor held that Ark. Stat. Ann. § 67-1838 was not complied with and ordered Patricia Penn to deposit $50,000, plus interest, in the registry of the court. On appeal, we reverse.

Our statute, § 67-1838, provides that savings accounts in savings and loan associations may be opened in the name of two or more persons, and if the person opening such account designates in writing that the account is to be a "joint tenancy" account, or a "joint tenancy with right of survivorship" account, or that the account shall be payable to the survivor or survivors of the persons named in such account, then such account and all additions thereto shall be the property of such persons as joint tenants with right of survivorship. The statute also provides that during the lifetime of such persons, the account may be paid to any one of them, if no contrary written designation is given the association.

We can conceive of no reason to hold there was not a sufficient designation in writing in this case. Guthrie Penn unquestionably took the necessary steps to create a joint account with right of survivorship with Patricia Penn. Nor is there any suggestion from the wording of the statute that

what was plainly intended in writing should be abrogated simply because when the CD's were reissued, the same signature cards were used in connection with the new CD's. A fatal weakness in the appellees' position is that when Patricia Penn surrendered the matured CD's and had them reissued to herself and Guthrie Penn she was legally free to have them issued to herself alone, because under the wording of the statute either she or Guthrie Penn was entitled to claim the proceeds, since no "contrary written designation" was given to the assocation. Thus, under the wording of the statute, while Guthrie Penn and Patricia Penn were still living, either of them could hve reissued the CD's in the same manner, or in their joint names, or even cashed them outright.

Appellees submit the money used to purchase these CD's belonged to Guthrie Penn and that is not disputed. They then cite us to language in *Snow* v. *Martensen*, 257 Ark. 937, 522 S.W.2d 371 (1975), where we said § 67-1838 is not to be interpreted as "closing and locking the door behind a joint account with right of survivorship when once the money is deposited in two names . . . *regardless of whose money is involved and who makes the deposit."* But that language must be read in the context of that case, which is in marked contrast to the case before us. In *Snow* v. *Martensen*, the deceased depositor never signed a signature card creating a joint account, nor gave any designation in writing (or otherwise) that she intended the deposit to be in joint tenancy with right of survivorship. The decedent died five days after the account was opened and there was no proof she even knew it was in a joint tenancy. The account was created in the first instance as a joint tenancy account simply upon the instructions of the individual claiming the funds by right of survivorship, Mrs. Martensen, and we pointed out that to apply joint tenancy to those facts "would create a situation wide open for fraud." we adhere to that view.

By analogy, appellees argue that Guthrie Penn signed nothing when the CD's were reissued and new numbers, new interest rates, and new maturity dates were assigned. But the significant fact is that Guthrie Penn clearly had

designated in writing the intention to create a joint tenancy with Patricia Penn when the CD's were first purchased and twice again when they matured, whereas in *Snow* v. *Martensen,* there was no designation in writing that Mrs. Box, the depositor, intended a joint account with Mrs. Martensen, to the exclusion of other heirs. On as many as four separate occasions Guthrie Penn demonstrated in writing his intention to create a joint tenancy with Patricia Penn.

Appellees also cite *McDonald* v. *Treat,* 268 Ark. 52, 593 S.W.2d 462 (1980), where we affirmed the trial court's holding that money deposited in a Paragould savings and loan association belonged to the estate of the depositor, rather than to a niece who claimed the acount by survivorship. Again, the important distinction between that case and this one is there was no *written* indication the depositor intended to create a joint tenancy with right of survivorship. The language of *McDonald* v. *Treat, supra,* both as to the purpose of our statutes (§ 67-552 and § 67-1838) and the need for certainty in this area of the law, is appropriate:

> At the outset we stress the desirability of certainty with regard to payable-on-death bank accounts and certificates of deposit. Such a disposition of money is similar to a will in that it may be changed by the property owner during his lifetime and does not take effect until his death. The law carefully safeguards the integrity of wills, but under the earlier statutes there was a regrettable degree of laxity with respect to payable-on-death accounts. We summarized the situation in *Cook* v. *Bevill, supra,* in construing new statutes applicable to bank deposits:

> It is a mild statement to say that Act 260 of 1937 created a maze of problems in the handling of joint bank deposits and certificates. Much litigation over those deposits has reached this Court. Many decisions had to be made by ascertaining the intent of the depositor from parol evidence "after death had sealed the lips of the person principally concerned." *Ratliff* v. *Ratliff,*

*Adm'x.*, 237 Ark. 191, 372 S.W.2d 216 (1963). Act 260 had minimal written requirements which fell far short of being sufficient. In that situation the Legislature and the banking interests turned to the comprehensive act under which the building and loan associations had been operating for years.

Thus what the new statutes did was to correct the earlier state of uncertainty by requiring that persons who resort to payable-on-death accounts or certificates designate in writing, over their signatures, just who is to receive the money at their death.

We conclude that Guthrie Penn's written designation of a joint tenancy with Patricia Penn was clear, and under § 67-1838 either he or Patricia Penn was entitled to the proceeds of these certificates of deposit during their lifetime, or by survivorship on the death of the other.

Accordingly, the decree is reversed.