WEBB et al. v. WEBB et al.

No. 7208.   Decided August 16, 1949.   (209 P. 2d 201.)

See 59 C. J. S., Mortgages, sec. 52. Communications between attorney and client, see note, 131 A. L. R. 705. See, also, 58 Am. Jur. 259.

*Udel Jensen*, Nephi, *A. W. Jensen*, Ephriam, for appellant.

*Cline, Wilson & Cline, Milford*, for respondent.

WADE, Justice.

J. M. Webb and Spencer Webb, respondents herein, brought suit to quiet title to certain real property situated in Millard County, Utah and to some personalty which had belonged to Wilmer Webb who had been a brother of theirs and the husband of Margaret Webb, the appellant herein. From an adverse judgment, Margaret Webb appeals both personally and as the administratrix of the estate of her deceased husband.

Sometime after the case had been first set for trial, a jury trial was demanded by appellant. The court refused to grant this demand and appellant assigns such refusal as error. From the facts disclosed by the record it appears appellant had waived her right to a jury

trial and there is nothing in the record to indicate
that the court abused its discretion in refusing to grant
that demand. See *Hunter* v. *Michaelis,* 114 Utah 242, 198
P. 2d 245, and cases cited therein to the effect that the
granting or denying of a belated demand for a jury trial is
within the discretion of the trial court. By this we do not
hold that without such waiver plaintiff was entitled to a
jury trial. It is not necessary for us to pass on that question so we express no opinion thereon.

Plaintiffs based their claim to the real property involved
in this action on a deed signed by appellant herein and her
husband, Wilmer Webb, as grantors. Their claims to the
personal property were based on a bill of sale executed by
Wilmer Webb. In her answer and counterclaims, appellant
admitted that she had signed the deed but averred that she
did not know it included the home and also that the deed,
though it appeared to be an absolute conveyance on its face,
was meant to be a mortgage to secure the loans of money
from the grantees to defray hospital and medical expenses
incurred and to be incurred by Wilmer Webb. Appellant
also claimed homestead and widow's rights in the real property.

The evidence disclosed that appellant married Wilmer
Webb in July, 1945, and thereafter lived with him in his
home in Deseret, Utah, with her three children by a previous
marriage, until February, 1946, when he left for Salt Lake
City to receive medical attention for an illness he had been
suffering from since the previous September. Appellant and
her husband had not found the marriage happy and he had
spoken of a divorce a few times before he left for Salt
Lake City.

Early in March, Wilmer was hospitalized and on March
14, 1946, appellant received a letter from him in answer to
one she had sent him, beseeching her to remain in their home
and avowing a love for her. The next day, March 15th, she
received a call from a friend of Wilmer's, an attorney at law,

who testified that he had advised her that he had seen Wilmer at the hospital; that Wilmer had consulted him about a divorce from appellant on previous occasions; that Wilmer would like to be reconciled with appellant but that if she felt that she did not care to stay with him, he wanted a definite understanding as to her attitude so that he could arrange his financial affairs to pay for his medical and hospital bills. The attorney also testified that he told her that Wilmer was seriously ill and would probably be an invalid for months or years and maybe for the rest of his life and would need care and that if she were not willing to be reconciled and to care for him, that Wilmer wanted to make arrangements with his brothers to do so and that if he did that he wanted to convey and transfer all of his property to them in consideration of their paying for all of his hospital and medical expenses, which he expected to be considerable and for taking care of him for the rest of his life. The attorney also testified in detail of his conversation with Wilmer concerning these arrangements. This attorney also told her that since she was Wilmer's wife it would be necessary to have her signature on the deed because she had certain rights in the property as such wife. He further testified that she replied that she did not feel that she could effect a reconciliation with her husband; that she desired to leave at the end of the school term in May and would like the use of the home and Wilmer's car until she was settled in a new place; that she did not desire a property settlement because she had only been married to him a short time and did not feel that she was entitled to anything except what she had brought with her and that she did not want anything from Wilmer. The attorney then told her that Wilmer would not do the paying but that his brothers would, and that he thought it advisable that she at least get an amount sufficient to tide her over until she had established herself and suggested that $500.00 would be a reasonable sum. He also suggested that before she did anything she ought to consult counsel of her own. She said that if the brothers would pay she would accept $500.00. The attorney then left

and a few hours later returned with a deed conveying all the real property, including the home place, in which Wilmer had any rights or interest, to the respondents herein. Appellant signed and acknowledged this deed and accepted the check for $500.00 made out by respondents.

Appellant's version of the transaction was slightly different. She testified that she did not unequivocally refuse a reconciliation; that she wanted to do what was best for Wilmer; that his attorney had told her that Wilmer would need a great deal of money to pay his doctor and hospital bills and that since Wilmer and his brothers were partners and most of the property was held in partnership, the raising of funds to pay Wilmer's expenses could be more effectively handled if the brothers were to hold title rather than to sell Wilmer's interest to a third person, then if Wilmer should get well and repay the amounts advanced by the brothers they could deed the property back to him. She also testified that the attorney had told her that her husband had discussed a divorce but that she had said she would not get one, that if Wilmer wanted one that was a different matter, and he finally asked her if $500.00 would be satisfactory as a settlement.

The evidence is undisputed that she accepted the check for $500.00 when she signed the deed, but that she then consulted her attorney and after doing so did not cash the check. After seeing her attorney, she testified she drove into Salt Lake City and saw her husband; that she asked him if knew whether the homeplace was included in the deed and he answered that he did not know. She also asked if he knew about his brothers giving her the check and "what was going on" and "He says no, he didn't know just what was going on." In April, a few weeks subsequent to this visit by appellant, to her husband, the attorney visited Wilmer. He testified that at this time Wilmer wanted to know exactly what had occurred when he had visited his wife. The attorney then told him there was no possibility of appellant remaining with him or staying at his home as his wife and

he might as well make up his mind to forget about it and that he had already made definite arrangements for his brothers to assume the responsibility of caring for him.

The court found that the deed was not given with the intention that it be security for moneys advanced or to be advanced by respondents for the benefit of appellant and her husband and that it was an absolute grant of all the signers interest in the property and that the consideration was the agreement of the respondents to pay all the medical and hospital expenses of Wilmer Webb and to care for him the rest of his life and the payment of $500.00 to Wilmer's wife, the appellant herein.

The court having found the facts in favor of respondents, this court will not disturb such findings, even in an equity case, unless we are satisfied from all the evidence that the findings are contrary to the preponderance thereof, always keeping in mind in determining this question the decision of the trial court, and that he was in a better position to determine the credibility of the witnesses than we are. Although the evidence was conflicting, it does not require a reversal of the findings in favor of respondents. From all the surrounding circumstances and from appellant's own testimony in regard to her relations with her husband, it was reasonable to conclude as the court did that the real property was conveyed and the personal property transferred to respondents absolutely in consideration of their promise to pay all the bills which appellant's husband might incur and to take care of him for the rest of his life, because appellant was not willing to assume the burden of caring for her husband for as long as he would be an invalid. Such findings were supported by the preponderance of the evidence.

Appellant argues that there would be no basis for the court's findings of fact if it were not for the erroneous admission of the conversations between the attorney and the deceased and the conversations of the attorney and

the respondents wherein the attorney testified that he told them he thought it was Wilmer's desire to convey and transfer all of his property and assets to them if they would be willing to take care of him the rest of his life in the event that his wife would not be willing to do so and that they had said they would be willing to do so and to take him in one of their homes when he left the hospital and give him the care he needed and any medical attention necessary. Appellant contends these conversations were inadmissible because as to appellant personally they were hearsay and as to appellant in her representative capacity, they pertained to confidential matters between an attorney and his client and were inadmissible against his client and were therefore inadmissible against the interests of the client's representative.

Appellant's defenses and counterclaims, both in her personal and representative capacities were based on averments that the conveyance and transfers were executed as security for debts to be incurred and were not absolute conveyances and transfers. In proving these allegations she testified as to the conversations between herself and the attorney and between herself and decedent. The conversations objected to as hearsay were not used to prove facts therein asserted to exist but the fact whether such conversations occurred were material issues in the case. The conversations between the attorney and the decedent show the attorney's authority and the purposes and limitations of such authority. The conversations between the attorney and respondents showed negotiations for and the consummation of a deal with respondents in accordance with the attorney's authority. There was no assertion by an extra-judicial witness of a material fact for the purpose of proving the existence of such fact, but the fact that such conversations occurred were circumstances which showed the purpose and intention of decedent to convey to the respondents unconditionally. The attorney was the one who acted for the decedent in the transactions

involved herein and his evidence was competent to relate his version thereof and a relation of the conversations he had with the principals in the transaction was not hearsay, even though it necessarily included statements made by the other parties to the conversation which were not made in the presence of appellant.

As to appellant's contentions that the conversations between the attorney and decedent were inadmissible because they were confidential communications between an attorney and client and would have been inadmissible against the interests of the client and were therefore inadmissible against the interests of his legal representative, it need only be pointed out that even if there were an attorney and client relationship existing between the attorney and the decedent, which the attorney denies, claiming only an agency relationship, nevertheless, the conversation would have been admissible under one of the exceptions to that rule since both appellant and respondent were claiming under the client and the intention of the decedent was important in determining what their rights were. See Jones on Evidence, 2d Ed., Sec. 2164, wherein it is stated:

"* * * Thus where, after the death of the client, litigation arises between parties all of whom claim under the client and the question to be determined is not the existence of a right of action against the estate, but the intention of the decedent as to creation of various rights which remain ambiguous, the attorney may testify. * * * Thus an attorney has been permitted to testify in an inquiry to ascertain, as between devisees under the client's will and a grantee claiming under a deed from the client made after the will, as to what was intended by the deed."

From what we have said it follows that the court did not err in admitting in evidence the conversations objected to and that there was therefore sufficient evidence to sustain its findings.

Appellant also assigns as error the refusal of the court to grant an accounting of partnership property as prayed for in her counterclaims.

Decedent and respondents had been partners in the farming business for many years and at least part of the property transferred by the deed was partnership property. On March 18, 1946, when decedent executed the conveyance and the bill of sale, the partnership was dissolved. The conveyance included

"all water rights of whatsoever kind and nature, or howsoever evidenced, used for the irrigation of said lands, or any part thereof.",

and the bill of sale besides enumerating certain livestock included all livestock owned by decedent or in which he had an equity and

"Also, all my right title and interest in all machinery and equipment of every kind, nature and description owned by Webb Brothers, heretofore consisting of myself and said J. M. Webb and Spencer Webb."

It is apparent that these two transfers were intended to include all partnership property and since the court found that the consideration for these transfers were the respondents' promises to support and maintain the decedent for the balance of his life, there could have been no sums due from the respondents to decedent and therefore there could be no necessity for an accounting.

Affirmed. Costs to respondents.

PRATT, C. J., and LATIMER and McDONOUGH, JJ., concur.

WOLFE, Justice.

I concur with the following observations.

The ultimate question presented was to whether the deed in form absolute was intended only as a mortgage to secure advancements for medical and hospital expenses which were expected to be incurred by the decedent, and for his own care for the remainder of his life if he should suffer invalidity. The conversations between decedent and his at-

torney revealed the intent and purpose for which the deed was made; they showed the circumstances under which the deed was made. Had the decedent announced when he executed or delivered the deed what his intent or purpose was, it would have been admissible as part of the res gestae. The attorney's testimony of his conversation with decedent showed why the attorney acted and in so testifying was, of course, evidence as to the decedent's interest in having him act as he did. I assume this is what is meant in the main opinion by the statement that

"the conversations between the attorney and the decedent show the attorney's authority and the purposes and limitations of such authority."

The technical admissibility of the conversations between the attorney and the respondents is not so clear to me, but it fits into the mosaic of the attorney's evidence of what took place between the appellant and himself. But even if technically inadmissible, how could such evidence be prejudicial in view of the evidence that appellant accepted $500.00 and her testimony that only in case Wilmer would get well were the respondents to deed the property back to him which is as to a promise to be performed on a condition. The condition did not happen. This does not appear to me to be inconsistent with a purpose to make the deed absolute. At all events I cannot see prejudicial error.

Since the statements of one party made to the other party are admissible where the terms of a contract or the reason or purpose for a deed are in issue because standing alone the deed would purport verity as a deed, it would seem that statements intended to be conveyed by one party to the other through an intermediary should be admissible when given by the intermediary.

It would be difficult indeed to show the purpose of the appellant in signing the deed in this case and accepting $500.00 without showing the conversation between her and the attorney to which the appellant makes no real objection.

And it would be difficult to explain the reason for that conversation by the attorney without allowing him to testify to what his conversation was with the decedent. They all fit in to make a piece in accordance with respondents' theory of the case and are explanatory of each other.