**PRUDENTIAL INS. CO. OF AMERICA**

v.

**WILLSEY.**

No. 4812.

United States Court of Appeals,
Tenth Circuit.

Aug. 3, 1954.

Grant H. Bagley, Salt Lake City, Utah (S. N. Cornwall, Dennis McCarthy, Clifford L. Ashton and David E. Salisbury,

Salt Lake City, Utah, on the brief), for appellant.

Paul Thatcher, Ogden, Utah (Leroy B. Young and Blaine V. Glasmann, Jr., Ogden, Utah, on the brief), for appellee.

Before BRATTON and MURRAH, Circuit Judges, and KENNEDY, District Judge.

T. BLAKE KENNEDY, District Judge.

This is an action in which appellee as plaintiff in the court below sought to recover upon an insurance policy upon the life of William Edward Willsey, husband of the appellee, in the sum of $5,000 in case of death through natural causes and $10,000 in the case of accidental death of the insured, in which policy the appellee was the sole beneficiary and the appellant was the insurer.

Issues were joined and the principal defense relied upon by the appellant upon this appeal is that fraud was practiced upon it by the insured at the time the application was made, followed by the issuance of the policy. The trial resulted in a verdict of the jury for the plaintiff for ten thousand dollars, upon which judgment was entered and is the basis of this appeal.

The policy was issued under date of August 28, 1952, and the death of the insured was May 24, 1953. The death occurred while the insured was taking a bath in a bathroom and may have resulted from a severe bruise on the head or from water in the lungs or from a combination of these reasons according to the testimony of witnesses and attendant doctors. The question of whether or not the death of the deceased was the result of an accident was submitted to the jury and was affirmatively found, which if the case was properly submitted, settles that question.

■ As before stated, the pertinent and decisive point in this case before this court concerns the admissibility of evidence and proofs as to whether or not the policy became null and void on ac-count of fraud practiced upon the company by the insured in making representations as to the condition of his health, his consultation of doctors and his hospitalization for a period of a few years prior to his making application for the insurance. The record shows that after having consulted with several insurance agents he called up the appellant company and a representative was sent to confer with him in regard to a policy. This representative was one Spendlove, who was not an ordinary insurance salesman but a staff manager of the appellant who was in charge of men and the direction of the sale of insurance. He went to the home of the insured and in the presence of the insured's wife talked over the matter of issuing a policy of insurance. Also present a portion of the time was another relative of the insured. The testimony of the appellee was upon the insured being asked the questions concerning his health over a period preceding the interview that the agent was told by the insured that he had had an accident in playing baseball by being struck upon the head and that after that time he had had dizzy spells, had consulted doctors and had been hospitalized. The insured further stated to the agent that he had more recently consulted a physician for examination in connection with contemplated employment and had been passed by that physician with a favorable report, and that he had not been troubled recently. Thereupon the insurance agent stated that having had no trouble recently these experiences did not matter and were immaterial as to his being entitled to receive insurance. The testimony of the appellee was further to the effect that the agent of the appellant himself wrote the answers and that the insured did not read the application before signing his name thereto. The testimony of Spendlove, the company representative, was somewhat "hazy" and uncertain about this interview but in general it might be considered as a denial of the information given by the insured at the time. However, this was

likewise a question for the jury if the case was properly submitted and which was determined in favor of the appellee.

The appellant objected to this form of testimony principally upon the ground that it tended to vary the terms of a written contract in that the contract itself provided in substance that no agent of the company had authority to make any concessions or vary the terms of the insurance contract. In addition it may be said that with the execution of the application the insured signed an authorization statement which was delivered to the agent, reading as follows:

"To Whom It May Concern: I hereby request and authorize you to give The Prudential Insurance Company of America any information they request with reference to my past medical attendance or advice or hospitalization.

"William E. Willsey".

█ Now as to the law which should govern this situation. It may be admitted that under certain circumstances evidence is not admissible to vary the terms of written contracts where the insurance contract provides that no sales agent of the company has a right to change the terms of that contract. However, this being a Utah contract, made and executed in that state, an examination of the law of that jurisdiction is required.

In a decision by the Supreme Court of Utah handed down in 1922, Chadwick v. Beneficial Life Ins. Co., 56 Utah 480, 191 P. 240, there seems to have been a suggestion that in order to avoid and nullify a policy of insurance it must be established that there were material misrepresentations knowingly made with intention to deceive and defraud. In a later Utah case in 1940 in this court involving the subject, Zolintakis v. Equitable Life Assurance Society of United States, 10 Cir., 108 F.2d 902 at page 905, the opinion purporting to follow the Chadwick case says:

"By this decision Utah is committed to the liberal doctrine that be-

fore misrepresentations of material facts will void a policy of insurance it must be established that they were not only knowingly made but also wilfully and intentionally, with intent to deceive and defraud."

In 1943 the Supreme Court of Utah in New York Life Insurance Co. v. Grow, 103 Utah 285, 135 P.2d 120, 121, the idea is expressed in the syllabus in the following language:

"Before misrepresentations of material facts will void a life policy, it must be established that they were not only knowingly made, but also willfully and intentionally, with intent to deceive and defraud."

Following these decisions the state Legislature of Utah in 1947 passed a statute carried in the Utah Code Annotated of 1953 under Section 31–19–8, which reads as follows:

"31–19–8. Materiality of misrepresentations — Warranties — Presumptions and burden of proof.— (1) Except as provided in subsection (2), no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, unless such misrepresentation or warranty is made with the intent to deceive.

"The insured shall have the burden of proof that such misrepresentation or warranty was not made with intent to deceive.

"(2) In any application for life or disability insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."

Therefore it seems that Utah is firmly committed to the rule that no misrepresentations or warranties made in the negotiation of an insurance contract shall defeat or avoid that contract unless such representations are made with an intent to deceive.

 Applying this law to the facts in the case, which have been briefly outlined above, and considered that the charge on the part of the appellant is grounded in fraud we are concerned only with the so-called representations of the insured at the time of making his application as it bears upon an alleged intent to deceive and under such circumstances it would seem that any testimony bearing upon that particular phase of the question should be admissible. The thought is expressed in the case of Northwestern Mutual Life Insurance Co. v. West, 62 App.D.C. 381, 68 F.2d 428, at page 431, where circumstances leading up to the sale of an insurance policy were involved, as follows:

"* * * We think this testimony was not incompetent, in view of the fact that the issue was one of fraud, and that all of the circumstances surrounding the transaction in question might properly be placed before the jury."

Other Utah cases are cited to the effect that the declaration that where conversations occur were circumstances which tended to show the purpose and intention of a person are admissible for the purpose of showing such intention. Webb v. Webb, 116 Utah 155, 209 P.2d 201.

One of the older cases is Stuart v. Hayden, 169 U.S. 1–9, 18 S.Ct. 274, 276, 42 L.Ed. 639, where the idea is expressed in the following language:

"The intent with which an act was done may be proved by the declarations of the party concerned, or by facts and circumstances from which the existence of the intent may be reasonably inferred."

These authorities are directly in point in the case at bar as under the Utah cases and the law of Utah an insurance contract is not voided unless the misrepresentations are made with *intent to deceive.* In the first place, as the question was put to the jury it was decided that if misrepresentations were made they must have been made without intent to deceive the company else there could have been no affirmative verdict. In the second place, as it was decided by the jury that a full disclosure was made by the insured as to his previous condition of health, his consultation of doctors and his hospitalization, it can scarcely be conceived that the applicant for insurance could have made the so-called misrepresentations had he had in mind the intention to deceive the company. The basis of such an intention would naturally have been a failure to disclose his previous condition and experiences as to his health.

The judgment is affirmed.