J. McLean **DURFEY**, Plaintiff and Appellant,

v.

**BOARD OF EDUCATION OF the WAYNE COUNTY SCHOOL DISTRICT**, Defendant and Respondent.

No. 16064.

Supreme Court of Utah.

Dec. 5, 1979.

Michael T. McCoy, Salt Lake City, for plaintiff and appellant.

Dan S. Bushnell and R. Bruce Findlay of Kirton, McConkie, Boyer & Boyle, Salt Lake City, for defendant and respondent.

HALL, Justice:

Plaintiff appeals an adverse ruling by the district court which refused to reinstate him following his suspension or dismissal by his former employer (hereinafter the Board).

Plaintiff was employed by the Board in 1969, to work as a counselor at Wayne High School and Wayne Middle School. In 1975 he was elected president of the Wayne Education Association for the 1975–1976 school year. During contract negotiation and at the behest of the members of his association, in February, 1976, he wrote a letter to John Brinkerhoff (Superintendent of the Board) whereby he sought to arrange a special audit of the school district, allegedly to clear up certain accusations of misappropriation of school property. During the next several months, disputes arose as to who was the proper representative to conduct the audit.[1] On June 10, 1976, appellant was informed by Brinkerhoff that his position of guidance counselor had been abolished as the result of decreased student enrollment, lack of funds and necessary staff reduction.[2] On July 14, 1976, plaintiff and one Jack Walters of the Utah Education Association appeared before the Board to request a reconsideration, inasmuch as plaintiff was a "tenured" employee. Then on August 11, 1976, plaintiff and Walters again appeared before the Board, along with the Utah Education Association attorney for the area. The minutes of that meeting show that the issues involved in plaintiff's suspension and termination were thoroughly reviewed, including the budget deficit, the legal basis of the Board for terminating a tenured teacher, the possible alternative positions which may have been given plaintiff, the question whether the action of the Board conformed to its published policies, case law from other districts where litigation had occurred over the rights of tenured teachers, and a final request that the Board reverse its earlier decision.

The Board refused to act as requested and this suit was filed. At trial, the jury returned a special verdict, wherein it found the following: There was a reduction in the number of teachers made necessary because of decreased enrollment, continuance of a particular service, or the shortage of anticipated revenue after the budget had been adopted; plaintiff was terminated for one or more of the preceding reasons; plaintiff's competence or his activities as a President of the Wayne County Education Association or membership in the Utah Education Association or his correspondence about a special audit was not a motivating factor in the decision to terminate him; even if there had been improper motive in his termination, plaintiff would have been terminated in any event for the reasons of decreased student enrollment, discontinuance of particular service, or shortage of anticipated revenue; and the amount of money which would be required to put plaintiff in the same financial position he would have been in absent his termination was $14,000. Upon the entry of judgment on the jury verdict, plaintiff appealed.

1. The Board felt it had a contractual right to negotiate only with the local education association, and plaintiff wanted to bring in representatives of the state association for an "independent audit."

2. At the same time the special education program at the Loa Elementary School was reduced to one half-day contract.

■ The first of plaintiff's contentions we will address on appeal is that there was insufficient evidence for the jury to find that plaintiff's dismissal was based on budgetary considerations. The jury verdict is a factual matter which should be affirmed if believable and admissible evidence will support it.[3] The evidence adduced at trial included the following: There were exhibits and testimony which showed that the enrollment in the district had been declining for several years.[4] The Board was concerned about this problem as early as 1974 when it inquired as to the feasibility of eliminating the counseling program and assigning its duties to other persons already employed as academic teachers.[5] In 1975 Brinkerhoff wrote to advise plaintiff that the Board was considering terminating the counseling program and made the following recommendation:

> We have this year some vacancies in at least three of our schools. May I suggest that you consider which of the available openings would be suitable to you.

The first action taken by the Board in the spring of 1976 to economize was a proposal to the negotiating committee of the local education association that the teachers of the district reduce their demand for salary increases in order to maintain the full staff intact. The teachers were informed that if their wage demands were met by the district that it would be necessary to release some teachers. The teachers insisted that they wanted a raise regardless of the impact it might have upon the number of teachers employed,[6] and the Board was required to consider other alternatives to reduce its overall expenditures for the coming year. The Board directed Brinkerhoff to prepare and present a proposal for resolving the budget problems, which he did. At the Board meeting on June 9, 1976, the Board passed the following resolution:

A motion to reduce the professional staff in the District in accordance with the Superintendent's recommendations made by Mr. Devon Nelson, seconded by Mr. Wells Mulford and passed unanimously. The Superintendent's recommendations were to reduce the special education teachers at the Loa Elementary School to one half-day contract and to discontinue the guidance counselor position for Wayne High School and Wayne Middle School.

As a result of this Board action Brinkerhoff sent a letter to plaintiff, dated June 10, 1976, which included the following language:

> It is a most unpleasant duty for me to inform you of the action which was taken by the Board of Education during its June regular meeting. After considerable deliberation the Board voted to discontinue the guidance counselor position. This action was made necessary due to our continuing student enrollment decline. . . . It is with a great deal of regret that the Board finds itself in the position where staff reduction is necessary. The economics facing public education is forcing staff reduction in many districts and in some a closure of entire schools. The creation of the middle school and normal attrition have delayed staff reduction in this District up to this time.

There was abundant, competent evidence adduced at trial for the jury to conclude that plaintiff was terminated because of the economic realities of decreased student enrollment.

■ Plaintiff's next contention is that the general dismissal procedure articulated in the Utah Orderly School Termination

---

3. *Nelson v. Peterson*, Utah, 542 P.2d 1075 (1975); *In re Estate of Hubbard*, 30 Utah 2d 260, 516 P.2d 741 (1973).

4. Student enrollment declined from 530 in 1965 to 450 in 1971 and 416 in 1976.

5. The Board felt that counseling was an expendable service (because it was non-academic

in nature) and also that it was a financial burden in that it failed to generate outside revenues unlike other special programs for students.

6. The concern over district finances is what provoked the request by the education association for a special audit, explained supra.

Procedures Act[7] requires notice and hearing for budgetary reasons which procedure was not complied with in the instant case. After setting forth the general procedure to be followed in dismissal of a school employee, the Act provides as follows:

*Nothing in this act shall be construed to preclude staff reduction when necessary to decrease the number of teachers because of decreased student enrollments in the district, because of the discontinuance of a particular service, because of the shortage of anticipated revenue after the budget has been adopted, or because of school consolidations.[8]* [Emphasis added.]

This language is a clear exception from the other provisions of the Act.[9] There is nothing in any other section of the Act which would reasonably imply that the procedural safeguards found elsewhere in the Act apply whenever the termination is for the budgetary concerns indicated. There is, therefore, no ambiguity present. It is our duty to give effect if such can be reasonably done to every word, clause, and sentence of a legislative enactment.[10] We hold that the statutory procedure for general termination[11] therefore does not apply wherever it can be demonstrated that the termination is "necessary to decrease the number of teachers because of decreased student enrollments in the district, because of discontinuance of a particular service, because of the shortage of anticipated revenue after the budget has been adopted, or because of school consolidations."[12] As a factual matter, the jury found that this was the reason for plaintiff's termination and the procedural safeguards of the Act therefore do not apply.

This is not to suggest however, that a person's basic constitutional rights to due process are forfeited in such a case.[13] The United States Supreme Court has held that a person may acquire a property interest in an employment contract and such person may not be deprived of that property interest without a showing of sufficient "cause" under basic notions of due process.[14] It is our judgment that due process has been afforded in the instant case. Not only was plaintiff represented by an attorney before the Board in an informal proceeding at which he was able to confront his "adversary"[15] but he has been given a trial on the merits in a court of law before an impartial jury. After plaintiff had presented his claims, the jury made specific findings that there was sufficient cause (based on budgetary considerations) for the Board to terminate plaintiff's contract. Furthermore, actual notification of the termination occurred in June and the next school year was not scheduled to begin until September, thereby giving plaintiff adequate time to secure substitute employment.

The next claim asserted by plaintiff on appeal is that the trial court erred in permitting Brinkerhoff to testify, (over plaintiff's objections), about the offer of employment made to plaintiff during the pendency of this action as evidence of defendant's good faith. The basic argument is that the job offer was hearsay not within the res gestae or excited utterance exception to the hearsay rule.

Rule 63, Utah Rules of Evidence, provides as follows:

7. U.C.A., 1953, 53–51–1 et seq.

8. U.C.A., 1953, 53–51–8.

9. See *Matheson v. Crockett*, Utah, 577 P.2d 948 (1978).

10. *Maw v. Lee*, 108 Utah 99, 157 P.2d 585 (1945); *Gord v. Salt Lake City*, 20 Utah 2d 138, 434 P.2d 449 (1967).

11. U.C.A., 1953, 53–51–5.

12. Supra, footnote 8.

13. The parties argue only the procedural due process rights afforded by the statute and plaintiff does not challenge a violation of his constitutional rights.

14. *Board of Regents of State College v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). See also *Pratt v. Bd. of Ed. of Uintah Cty. Sch. Dist.*, Utah, 564 P.2d 294 (1977).

15. A transcript of this proceeding was furnished to the jury in the form of an exhibit.

Evidence of a statement which is made other than by a witness while testifying at the hearing *offered to prove the truth of the matter stated is hearsay evidence and inadmissible* . . . [Emphasis added.]

Therefore, utterances (or verbal acts), evidence of which is offered for some purpose other than to prove the truth of the matter stated, and not excludable as hearsay.[16] Since the evidence in this instance was offered not as proof of an employment offer, but only to show good faith, it was admissible under the Rule.

Furthermore, plaintiff has failed to show how he was prejudiced by the admission of such a statement into evidence. If anyone was prejudiced by the testimony, it was defendant. By placing its offer to compromise in evidence, the defendant was making a tacit admission that it had a duty to be reasonably diligent in rehiring plaintiff when the financial crisis which led to his termination had subsided.

This leads to plaintiff's final point on appeal, to wit, that plaintiff's motion for summary judgment on Claim III of his amended complaint was improperly denied. Plaintiff had alleged therein that defendant had violated its own personnel policies[17] when plaintiff was "terminated" rather than "suspended." This motion was made *after* the trial[18] and was denied on the grounds that the issue had not been timely brought to the court's attention and that the argument had been asserted only then for the first time. Basically, it is the duty of a moving party to press such a matter at the trial stage.[19] More impor-

tantly, however, is that this matter could not properly have been handled as a summary judgment in any event. Rule 56, Utah Rules of Civil Procedure, provides that the judgment shall be rendered if the supporting papers "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." As indicated supra, the Board had in fact offered plaintiff a job one year following the discontinuance of the guidance counselor position in June 1976. Based solely on Section 5.e of the personnel policies it cannot be said that *as a matter of law* the district is obliged to extend to a suspended employee any particular job at any particular time, especially when an outstanding dispute exists. The motion for summary judgment was therefore properly denied.

For the foregoing reasons the judgment on the special jury verdict is hereby affirmed in its entirety. No costs awarded.

CROCKETT, C. J., and WILKINS, MAUGHAN and STEWART, JJ., concur.

---

**16.** See *Hawkins v. Perry*, 123 Utah 16, 253 P.2d 372 (1953), and *Webb v. Webb*, 116 Utah 155, 209 P.2d 201 (1949).

**17.** Section 5.e, Policies of the Board of Education of the Wayne School District provides as follows:

Whenever it becomes necessary to decrease the number of permanent employees in the school district because of decreased enrollment, the Board of Education may, at the close of the school year, suspend as many of such employees as may be necessary.

**18.** Summary judgment is available only where no factual issues are in dispute, and is not to be resorted to after a trial of the issues. See *Hein's Turkey Hatcheries v. Nephi Processing Plant*, 24 Utah 2d 271, 470 P.2d 257 (1970), which applies Rule 56(c). It is conceivable, however, that a law issue could be reserved by the parties and the court for a later consideration, pending resolution of the factual issues. We are not faced with such a situation in the instant case.

**19.** See 73 Am.Jur.2d Summary Judgment, Sec. 15.