## CIRCUIT COURT OF BEDFORD COUNTY

Dwight S. Stone

v.

Bedford County School Board

December 21, 1981

By JUDGE WILLIAM W. SWEENEY

The sole issue in this case is whether the Bedford County School Board breached its contract with the plaintiff, a teacher, by its failure to give him notice of a contract change for the 1980-81 school year by April 15, 1980. The case was heard on stipulations and two days of testimony.

I find that the plaintiff is a continuing contract teacher employed by the Bedford County School Board. The contract provides that his services were to begin on July 1, 1976, "and thereafter as prescribed by the School Board." (Exhibit A-1). It further provides that the Board is not obligated under the contract "unless and until sufficient funds to meet its obligations hereunder have been approved by the appropriating body." The appropriating body in this case is the Bedford County Board of Supervisors. In addition, the contract provides that "the annual period of service shall be fixed by the School Board in accordance with law."

In addition to the continuing contract, the parties entered into salary agreement contracts each year (Exhibits

B1-B5). The agreements specified the plaintiff's salary, his period of service, and the school to which he was assigned. Each agreement was tendered to the plaintiff after April 15th of the respective school year and was signed by him in June. Separate contracts were executed for each school year. Under the salary agreement signed by the plaintiff in June 1979, his annual period of service for the 1979-80 school year was set at 12 months. For a number of years, he had been a 12-month contract teacher.

In the Spring of 1980, the County Board of Supervisors consisted of many newly elected members. Fearful that the supervisors might make substantial cuts in the proposed school budget, the School Board, through its Superintendent, issued blanket notices to all extended contract teachers on March 14th and 19th, 1980, telling them that there was a definite possibility that some 12-month contracts would have to be shortened beginning July 1, 1980. Plaintiff was especially vulnerable to a contract cut because he was in that class of 12-month teachers who did not work directly with students or student projects during the summer. While these memos supplied the plaintiff with actual notice of a possible contract change prior to April 15th, it is doubtful that they qualified as legal notices under the state statute then in effect for reasons stated by plaintiff's attorney. (See p. 9, Plaintiff's opening brief)

The school budget for the 1980-81 school year was developed by the School Board over a six month's period. It was the result of much work and input from many sources, including teachers. Employee salary increases were given the highest priority because of competition and inflation. The School Board transmitted its budget for the 1980-81 school year to the County Board of Supervisors on March 20, 1980, (Exhibit E). The budget requested a total of $7,792,656 in local funds. Nearly seven million dollars was requested in Item 17(b) for instructional personnel. The proposed budget represented a 13.3% increase over funds appropriated for the previous year. A major portion of the increase was in fixed charges such as transportation, maintenance and operation, and debt service, items over which the Board had little control.

The Bedford County Board of Supervisors considered the budget at its April 29, 1980, meeting. The Board did

not vote on the budget at that time but did vote to limit the amount of local funds for school purposes to $6,642,652 or $1,150,000 less than requested. The School Board was told to cut the budget and come back. After a public hearing, the School Board requested the Supervisors to reconsider approval of the budget as proposed. This request was denied by the Supervisors on May 27, 1980. On June 3, 1980, the School Board presented the Supervisors with a reduced budget which included reductions in extended teaching contracts (10½, 11, and 12 month contracts). On June 20, 1980, the Supervisors authorized $300,000 more in local funds. This represented a shortfall of $850,000. The additional appropriation was not actually funded until December, 1980, and it was made contingent upon the School Board's submitting a plan for spending these funds (Exhibit Q).

On June 26, 1980, the Supervisors finally approved and appropriated a School Board budget for the County. The appropriation was by major category. The appropriation for the major category covering salaries for teachers was $6,417,839 or $562,971 less than the budget request. The December, 1980, appropriation was also made by major category. Because of the cuts in the budget, the School Board implemented many of the revisions included in its report to the Supervisors, including a one-month reduction in the contracts of teachers who were not required to work directly with students in the summer months. Because the plaintiff, Dwight Stone, fell in this category, the School Board wrote the plaintiff on June 30, 1980, advising him of the change in his status for the next year from 12 months to 11 months because of budget cuts by the appropriating body. After returning from vacation, the plaintiff received the letter and accepted the agreement under protest on July 7, 1980. This suit followed.

Based upon an analysis of the evidence, the authorities presented, and this court's research as to law in other states, the plaintiff's claim must be denied. The four main reasons are:

1) Provisions of the plaintiff's contract with the School Board were contingent, expressly and by statute, upon necessary funding by the Board of Supervisors.

2) The cuts in the school budget for the 1980-81 school year were substantial cuts which legally justified

the Board in making teacher contract adjustments affecting salary.

3) This court should not and cannot tell the School Board how to allocate reduced budget funds so long as the Board acted reasonably.

4) The plaintiff has failed to prove a 12-month continuing contract.

### Contract Contingent on Funding

The plaintiff's continuing contract (Exhibit A-1) states that the contract period shall consist of a minimum of ten months and that the length of the school term and the annual period of service shall be fixed by the school board in accordance with law. It further provides in paragraph 3 that the School Board "shall not be obligated hereunder unless and until sufficient funds to meet the obligations of the School Board hereunder have been approved by the appropriating body." (County Board of Supervisors)

The School Board determined that sufficient funds were not appropriated for the year in question to continue the plaintiff's 12-month contract and therefore reduced it to 11 months with a corresponding salary reduction. Such decision and notice was made after April 15th. It is plaintiff's position that he had a right to be notified of this change on or before April 15th, and that failure to do so breached his contract and entitled him to money damages.

Section 22.1-304[1] of the Code of Virginia, sometimes referred to a the "teacher tenure statute" reads as follows. (Applicable language is italicized.)

> If a teacher who has not achieved continuing contract status receives notice of reemployment, he must accept or reject in writing within fifteen days of receipt of such notice. Except as provided in § 22.1-305, written notice of nonrenewal of the contract must be given by the school board on or before April fifteenth

---

[1] The applicable statute in effect in 1980 was Section 22-217.4. However, the difference in the statutes is inconsequential here.

of each year. If no such notice is given a teacher by April fifteenth, the teacher shall be entitled to a contract for the ensuing year in accordance with local salary stipulations including increments.

*Teachers employed after completing the probationary period shall be entitled to continuing contracts during good behavior and competent service and prior to the age at which they are eligible or required to retire except as hereinafter provided. Written notice of noncontinuation of the contract by either party must be given by April fifteenth of each year; otherwise the contract continues in effect for the ensuing year in conformity with local salary stipulations including increments.*

A teacher may resign after April fifteenth of any school year with the approval of the local school board. The teacher shall request release from contract at least two weeks in advance of intended date of resignation. Such request shall be in writing and shall set forth the cause of resignation.

In the event that the board declines to grant the request for release on the grounds of insufficient or unjustifiable cause, and the teacher breaches such contract, the certificate of the teacher may be revoked under regulations prescribed by the Board of Education.

*As soon after April fifteenth, as the school budget shall have been approved by the appropriating body, the school board shall furnish each teacher a statement confirming continuation of employment, setting forth assignment and salary.*

*Nothing in the continuing contract shall be construed to authorize the school board to contract for any financial obligation beyond the period for which funds have been made available with which to meet such obligation.*

A school board may reduce the number of teachers, whether or not such teachers have reached continuing contract status, because

of decrease in enrollment or abolition of particu-
lar subjects.

This statute is remedial legislation and must be
strictly construed. A reading of the italicized words
of this statute make it clear that funding of teacher's
contracts is contingent on sufficient budget appropriations
by the Board of Supervisors. The purpose of the statute
was to provide job security for school personnel and to
aid School Boards in their personnel planning. There
are reciprocal notice requirements for both teachers
and boards. By its terms, the statute recognizes that
contract and salary details cannot be finalized until
the appropriating body approves a budget after April
15th. Under Section 22-127, the Supervisors were not
required to act on the budget until May 1, 1980, or within
30 days of the receipt of the estimates of State funds,
whichever shall later occur. In fact, the School Board
would be prohibited from obligating itself for funds
not appropriated. Section 22.1-91, Code of Virginia,
provides in pertinent part:

No school board shall expend or contract
to expend, in any fiscal year, any sum of money
in excess of the funds available for school
purposes for that fiscal year without the consent
of the governing body or bodies appropriating
funds to the school board. . .

In briefs, the plaintiff places emphasis on the
theory that this case involves a change in the length
of a contract and not just a salary change. This seems
to be a distinction without a difference. The contract
term and the salary are inextricably related here. One
cannot reasonably separate salary from period of service. A
teacher's annual period of service dictates his salary. Ob-
viously, the School Board reduced the plaintiff's contract
by one month because it felt it could not fund his 12-month
contract on a slashed school budget, and because he was
in a class of teachers who did not work directly with
students in the summer. The plaintiff was not singled
out for this cut. Others in his category were also cut. How-
ever, the cut was in money not months. A lack of funds

motivated the change. The real change was one month's salary not one month's service. Indeed, the plaintiff is seeking money in this suit. He wants damages pursuant to the salary scale adopted by the Board at its March 13, 1980, meeting along with benefits keyed to that amount and his costs and attorney's fees. In my opinion, there is little if any difference in principle between a one month's reduction in service and a one month's salary reduction except that the application of the state statute (22.1-304) would be clearer to a salary adjustment alone.

### Financial Exigency

Counsel for plaintiff, in his opening brief, argues that the defendant has failed to prove the affirmative defense of a financial exigency sufficient to justify adjustment of the plaintiff's contract for the 1980-81 school year. I disagree. This was a question of fact to be decided on the evidence. I conclude that the substantial unexpected cuts in the School Board budget by the Board of Supervisors created a financial exigency for the year in question.

Considering inflation and fixed costs, a 13.3% requested increase in the 1980-81 budget was not unrealistic. The Supervisors ordered the School Board to make spending cuts in its proposed budget. After careful study, the School Board made financial cuts as to a certain class of teachers by reducing their contract length to no less than 10 months as provided in the continuing contracts. By reducing the terms of service, the teacher salary item was reduced and the budget was brought closer in line with appropriations.

There is no evidence before me that teachers' service periods were cut for any reason other than to reduce school spending. No discrimination against the plaintiff nor other teachers in his class has been proven. It was a money matter, purely and simply. Absent a showing of bad faith or arbitrary exercise of judgment, this court cannot direct the School Board to pay the plaintiff for 12 months at the expense of other equally important and necessary budget obligations. As Dr. Parlier testified, the money would have been available even in the reduced budget to continue all extended contracts if funds were

transferred from other categories. The School Board was under to legal obligation to do this, however, See testimony of Richard L. Kelly, former superintendent for business and finance, as to the relationship between teachers' contracts and funding. (Transcript pp. 194-263)

## Allocations of Funds by the School Board

The argument is made that the School Board has a duty to honor its contracts first and fund such contracts "off the top." In the first place, it is doubtful the Board could have done this without violating other contracts or commitments. The larger question is to what extent should a court tell a school board how to allocate its reduced budget funds in the absence of binding non-contingent contracts? Of course, discretion is not a factor if a binding contract was breached, but it is a factor on this particular issue.

Arguably, the School Board may be prohibited by statute from shifting funds from one category to another. Section 22.1-94 of the Code provides in pertinent part: "The amount appropriated by the governing body for public schools shall relate to its total only or to such major classifications as may be prescribed by the Board of Education." Section 22.1-89 provides that:

> Each school board shall manage and control the funds made available to the school board for public schools and may incur costs and expenses. If funds are appropriated to the school board by major classification as provided in § 22.1-94, no funds shall be expended by the school board except in accordance with such classifications without the consent of the governing body appropriating the funds.

As the Supreme Court of Virginia said in *County School Board v. McConnell*, 215 Va. 603, 212 S.E.2d 264 (1975) (a case inapposite on its facts):

> The great weight of authority is to the effect that the decision of a school board will not be disturbed by the courts unless

the board acted in bad faith arbitrarily, capriciously, or in abuse of its discretion, or there is no substantial evidence to sustain its Action.

The court, in *White v. Board of Education, Union Free Sch. Dist., supra, aptly stated*:

The Court will not substitute its judgment for that of the public body or officer, but rather must decide whether the determination of the school board should be set aside either because it had no basis in fact [citation omitted], or because it was arbitrary and capricious [citation omitted], or because it constituted an abuse of discretion [citation omitted]. Where there is a rational legal and factual basis for a school board's administrative determination, the Court will not overturn such decision and substitute its own judgment even if it would have reached a contrary conclusion. [Citations omitted] 215 Va. 607.

In *Gwathmey v. Atkinson*, 447 F. Supp. 1113 (E.D. Va. 1976), the federal district court said in a case not applicable on its facts:

For sound policy reasons courts are loath to intrude upon the internal affairs of local school authorities in such matters as teacher incompetency. School boards, as well as other administrative agencies, should have wide discretion in deciding whether or not to continue employment of their personnel. Discretion, however, means exercise of judgment, not bias or capriciousness. Thus, such a decision must be based upon fact and supported by reasoned analysis. 447 F. Supp. 1117 (Citations omitted).

I think that the School Board had a right to allocate its finite budget funds as it did, and that it did not abuse its discretion nor act in a capricious or arbitrary manner.

*Plaintiff has Failed to Prove*
*a 12 Month Continuing Contract*

The plaintiff's continuing contract with the School Board did not specify a 12-month contract. Rather it guaranteed a minimum 10-month contract, and provided that the annual period of service would be fixed by the Board in accordance with law.

Both the School Board and the plaintiff were legally free to make binding contracts in accordance with the terms of their agreements. I find nothing ambiguous about the language of the continuing contract or the annual salary agreements. As in other contract cases, both parties are bound by their agreements and construction is not necessary. The continuing contract established a minimum 10-month per year teacher contract. The annual salary agreements set the term of service (which could not be less than 10 months), the salary for the year (depending on appropriations), and the school assignment.

The plaintiff has the burden of proving a valid contract and its breach. While it is true that the plaintiff had been employed for 12 months for many years, his base contract did not guarantee him 12 month's employment every year. Plaintiff's argument that both agreements should be read together to determine true intent, and that contracts may be established by conduct of the parties is good law. However, it loses force in the face of clear contract language to the contrary.

*Discussion of Other Points Raised in Briefs*

Both sides cite extensively from Attorney General's opinions over the last ten years. Admittedly, they are confusing. None are precisely in point. The opinions relied on by the plaintiff are distinguishable mainly on the absence of an express contract provision making the contracts subject to governing body appropriations and the existence of a true financial exigency. Also, some opinions involve probationary teachers.

One of the Attorney General's opinions said in part:

A continuing contract does not mean a contract the terms of which may never change

so long as the teacher continues to teach. Employment itself, and not a certain salary, is the guarantee of continuing contract status. (1976-77 O.A.G. 246, Aug. 18, 1976, letter to Senator Douglas Wilder).

This language suggests that a reasonable interpretation of the "teacher tenure statute" is that the Board must notify the teacher on or before April 15th whether he will have a job for the next year (of at least 10 months duration), and the teacher must likewise notify the Board if he will not teach next year, but that all other matters related to funding, including salary and duration of service, must await later action by the appropriating body. I find this to be a reasonable interpretation of the statute.

Under a statute somewhat different from the Virginia statute, the Supreme Court of Utah considered the appeal of a tenured teacher dismissed without notice for budgetary reasons in *Durfey v. Bd. of Education*, 604 P.2d 480 (Utah 1979). In upholding the Board's action, the Court stated:

Nothing in this act shall be construed to preclude staff reduction when necessary to decrease the number of teachers because of decreased student enrollments. . . because of the shortage of anticipated revenue after the budget has been adopted, or because of school consolidations. 604 P.2d 484.

### Conclusion

For the reasons herein stated and based upon the record as a whole, I rule that the School Board did not breach its contract with the plaintiff under the facts of this case. Judgment for the defendant will be entered. Counsel for the School Board will prepare an appropriate order.